Laurence H. **FROMMHAGEN**

v.

The **UNITED STATES.**

No. 177–77.

United States Court of Claims.

March 22, 1978.

Laurence H. Frommhagen, pro se.

Arlene Fine, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before COWEN, Senior Judge, NICHOLS and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

This case is before the court on cross-motions for summary judgment. Plaintiff appears *pro se.* It is a civilian pay case, and the petition was filed April 1, 1977. Plaintiff, a former employee of the National Aeronautics and Space Administration (NASA) at Grade-14, sues to recover back pay from his alleged illegal discharge on September 6, 1968, until September 14, 1974, when he obtained other employment, or until such other date as the court may determine after consideration of his reasons for delay in bringing suit. He does not claim reinstatement.

Defendant's motion, which was the first to be filed, set up the threshold defenses of laches and collateral estoppel. The latter, however, is readily disposed of. In *Frommhagen v. Klein,* reported in 456 F.2d 1391 (9th Cir. 1972), the plaintiff's district court suit was intended to test the legality of his removal from the payroll before his appeal was heard, an issue not before us. So he says and so defendant now admits. It was premature for any other purpose as he had not exhausted his administrative remedies when he filed it. Remarks in the appellate opinion that seem to pass on other issues were written gratuitously, he says. We conclude the case does not establish *res judicata* or collateral estoppel here. The laches issue is more complex, sufficiently so to require a formal, signed opinion, and the facts are indeed unusual.

Plaintiff's cross-motion for summary judgment was founded on the merits of the case and defendant in response has also discussed the merits, claiming itself entitled to summary judgment on merits grounds also. If laches is the decisive issue, however, as we believe it is, merits are not reached and need not be considered.

Plaintiff commenced a probationary employment with NASA as a GS–14 in 1962, successfully completed probation a year later, and received full career status in August 1965. His course even then was far from smooth, however, as he received a memorandum in 1964, had a "corrective interview" in November 1964, and received a letter in January 1965, all dealing with alleged weaknesses in his performance as a research scientist. Over a year before separation he was denied a within grade salary increase because of not reaching an acceptable level of competence. He seems to have had a monumental lack of rapport with supervisors and fellow employees. His troubles received the attention of the press. We assume solely for summary judgment purposes that all this was the fault of others and none of it the fault of plaintiff. He is alleged to have demanded production of 101 witnesses, all fellow employees, at his separation hearing, and to have assumed that all would be hostile. He filed a libel suit against an agency lawyer on account of a critical memorandum the latter wrote. The case is reported as *Frommhagen v. Glazer,* 442 F.2d 338 (9th Cir. 1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 711, 30 L.Ed.2d 729 (1972). He prosecuted matters under the agency grievance procedure, including a discrimination complaint. He claimed, and for summary judgment purposes we assume truthfully, that personal hostility towards him was the motivating factor behind his ouster.

Plaintiff is an ingenious and articulate man, but he is manifestly unhampered by the relevancy concepts of the professional lawyer. He has generally represented himself and desires no other counsel; indeed, few professionals could make life so difficult for those who stand in his way or wish to do him what he considers wrong. As is usual in pay cases having a protagonist of this type, the record is of monumental size. He says he "set out from 1966 to perfect a record so encompassing and so detailed as to all of the events and circumstances, that little or no additional testimony would be required * * *. Indeed, the slow and meticulous construction of the record became an obsession which was a large factor in plaintiff's 1972 illness." Defendant's counsel filed what she supposed was the

complete administrative record, about 4,000 pages, but upon plaintiff's strenuous protest it was ascertained that there were 5,000 pages more. Since the oral argument, defendant has asked and received permission to file all this material too.

■ Generally speaking, in litigation, magnitude of record produces further magnitude of record, and consumption of time, further consumption of time, until eventually we get those cases that run for twenty years or more, veritable reproductions in fact of the fictional *Jarndyce v. Jarndyce.* While generally it is convenient to measure times for laches purposes in pay cases from exhaustion of administrative remedies to commencement of suit, evidently, if the laches rule is to serve any real purpose, and not be just another statute of limitations, judge made, we must at least consider time from the start of the controversy to the prospective date of judgment, not as a laches period itself, but in evaluating the reasonableness or excessiveness of that period. The deliberate policy of the plaintiff, boasted of by him, must be credited with extending the time between the start of controversy and the exhaustion of administrative remedies. Likewise, if the merits ever reach our trial division, much as we admire and respect its capabilities, we doubt if it can bring the case to an end in any reasonable frame of time.

Turning, however, to the shorter period, from exhaustion of administrative remedies to commencement of suit, defendant points out that the former date was April 12, 1971, when the Board of Appeals and Review of the Civil Service Commission denied plaintiff's appeal, and suit having been brought April 1, 1977, the difference, 5 years, 11 months, and 19 days, was little short of the six-year statute of limitations and sufficient to make out a case of laches with little or no showing of actual prejudice. *Grisham v. United States,* 392 F.2d 980, 183 Ct.Cl. 657, *cert. denied,* 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968). This plaintiff, however, puts forward two considerations that give the case its unique features and require our careful consideration.

■ First, plaintiff cuts off his back pay claim at the date of September 14, 1974, when he regained employment, even though at a lower rate of pay. This period is probably less than half that which would be required to date of judgment, if this case goes to merit adjudication, although, as he is employed, he may not be being as generous as it first appears. If this cut-off does not suffice to make good any injury to defendant from not bringing the suit soon enough, he will accept any further cut the court may impose. He correctly cites *Chappelle v. United States,* 168 Ct.Cl. 362 (1964) that a claim to back pay for a period cut short by the plaintiff's concession cannot be defeated on laches on the theory defendant is asked to pay two salaries for an unreasonably long period. It still remains true that the doctrine of laches in pay cases was not made by judges solely and wholly to protect defendant from having to pay two salaries for one body in place on the job, over an unreasonably extended period. There are other reasons, and we will elaborate below what they are. Plaintiff's position does not detract from the weight of these other reasons. It does, however, moot the issue whether a replacement for plaintiff was actually in fact hired, which seems to have been true, if at all, only in the broadest and most general sense. His specific slot was not refilled.

■ Second, plaintiff's most strongly urged point is his mental breakdown. Pursuing as he was a number of lawsuits after April 12, 1971, his stresses and anxieties mounted until in October 1972 he disappeared for three weeks, being found on a freeway several hundred miles from his home, unable to remember, to verbalize, or to form mental images. He has no memory of the three week period. He asserts, and we take it as true for summary judgment purposes, that he remained disabled up to the date he resumed employment, September 14, 1974. He would, of course, be unable to show he was "ready, able, and willing" to work during any such disability period. A person cannot receive back pay for a period when he was psychiatrically

disabled. *Carter v. United States,* 206 Ct.Cl. 61, 509 F.2d 1150 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976). So in a sense his claim his disability lasted so long is disinterested. By it he further reduces his claim to a period ending October 1972.

■ Plaintiff throws out hints he may have been disabled before and after the period we allow. We think they should be disregarded for summary judgment purposes. A person who *pro se* institutes and maintains court proceedings and administrative appeals represents by implication that he is capable and competent of conducting his own affairs. If he wants this court to believe the contrary for a period selected by him, he should make a specific allegation. This plaintiff has done, with supporting affidavits, for the period we allow, but not for any longer period. Therefore, we hold, for purposes of defendant's motion, that plaintiff was disabled psychiatrically from some time in October 1972, to September 14, 1974, but that he was competent before and after those dates.

■ Plaintiff, when his disability ended, seems to have taken steps under the Freedom of Information Act, 5 U.S.C. § 552, to force the Civil Service Commission to divulge decisions in other cases that he might use in attacking the one made in his own. He was successful in the U.S. District Court, but how this furthered achievement of his ultimate goal does not appear. His main reason for not suing here from September 14, 1974, to April 1, 1977, is that he does not claim for that period, but that alone does not suffice to stop laches running.

Apart from the two salaries argument, the traditional main reason for the laches doctrine is prejudice to defendant from the loss of evidence by death of witnesses, human forgetfulness, destruction of documents, etc. (Defendant points out that three key witnesses are dead.) *Brundage v. United States,* 205 Ct.Cl. 502, 504 F.2d 1382 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). In that case the two salaries argument was applicable only in the non-specific way that it is here.

Also in *Brundage v. United States, supra,* this court brought forward another reason to apply laches, that will often arise. Most pay cases, if they involve an adverse action, will also, often and perhaps even usually, involve allegations of misconduct against some official who was instrumental in effecting the adverse action. This is one of the reasons officials are reluctant to institute such actions when they should do so. They know it will lead to mud being thrown at them in a proceeding to which they are not parties and have no representation by counsel. *Brundage, supra,* was a signal illustration of this, for plaintiff's theory of his case required this court to believe that a retired officer, years before when on active duty, had falsified a record to conceal his own errors. Interviewed, the officer was unable to recall anything about the case. This court believed that in common fairness, this grave charge should have been put to the test of trial while memories were fresh. Because of needless delay in filing the suit, the petition was dismissed for laches.

Here the difference is that plaintiff seeks to expose not just one villain, but several. That difference does not exclude the application of *Brundage* as authority. To be specific, *e. g.,* after all these years he wants to depose his particular *bete noire,* Mr. Klein, who was the defendant in the Ninth Circuit suit. And there are many others.

Thus we think the authorities require the question of laches to be weighed, notwithstanding the shortening of the claim period and the relative weakness of the two salaries argument.

■ Plaintiff would account for not suing here in the pre-disability period, roughly a year and a half between exhaustion of remedies and mental breakdown, by the assertion that he could not file here until *Frommhagen v. Klein* was disposed of in the Ninth Circuit. But he has already persuaded us that case has no collateral estoppel effect here, because the sole issue there was whether defendant could remove him

from his job before allowing a hearing. He cannot have it both ways. We conclude he could, and should, have filed here as soon as his administrative remedy was exhausted. Defendant could not have pleaded 28 U.S.C. § 1500, barring suits on claims on which plaintiff has a suit pending in another court. *Camero v. United States,* 345 F.2d 798, 170 Ct.Cl. 490 (1965) excludes cases where the suit in the other court is for relief not available here. We could not have reinstated plaintiff pending his hearing, the object of the other suit.

Plaintiff also, more weakly, suggests trouble getting counsel to defend him. We cannot take this seriously without supporting detail. Plaintiff is accustomed to representing himself and does an extremely good job at it, especially considering his purposes as we believe they are. He is indifferent to or affirmatively desires magnitude of record and longevity of proceedings. His object is to expose and confute the machinations of his enemies. He is relatively indifferent to money, having already discarded much of his back pay claim. The last paragraph of his petition leads us to believe he would, to keep the suit alive, discard all the rest of it except the necessary jurisdictional dollar. We find it hard to imagine the attorney who would work in harness with such a client at the reins, or in Bernard Shaw's deathless phrase, play horse to such a Lady Godiva. Counsel would always be demanding tactics unacceptable to the client: to shorten the record, to expedite the proceeding, to bring it to judgment, to earn his fee.

■ Thus, in view of the foregoing, our analysis of the laches issue is as follows: This suit is not really about money, except the minimum jurisdictional amount. In this respect, it is not unique; the same thing is generally true in our stigma-type military discharge cases. The conventional money argument in laches cases, that defendant is asked to pay two salaries for one person's work, is not decisive here, and weighs to such a small extent as not to influence our decision. It is absurd to have the laches question turn on plaintiff's being easy on defendant in his claim for damages, when money is not really what this suit is about. The question is whether the plaintiff has unduly and unfairly delayed the bringing of suit, and therefore the trial, in face of the inevitable loss of evidence that lapse of time causes, which is only illustrated here in the demise of witnesses, the unfairness to the living who are held with the sword of Damocles, plaintiff's charges against their ability and integrity, over their heads now over a decade, not counting the inevitable further time that would elapse before trial, and in face of the enormous record, which demanded a prompt trial even more than in the ordinary case. Plaintiff was not required to bring suit during his disability, but we do not simply extend the time for suing a length of time equal to the duration of the disability. Rather, when plaintiff emerged from his disability, we think he should have reviewed his intention to sue forthwith, in light of the obvious fact that the evils incident to his not suing promptly were still occurring, even if up to that point they were not his fault. Thus, if the two years lapse due to disability is excluded from the reckoning, still it shortens to some extent the time otherwise allowable, measured against the almost four years net delay in actually commencing the suit. To put it another way, whatever reprehensibility attaches to a failure to bring suit for a continuous four year period, is greater if the period is discontinuous, partly before and partly after a period of disability during which, however, the case did not stop getting stale and the involved officials were continually kept in apprehension. Plaintiff cannot say his charges should not be taken seriously: until they are withdrawn or refuted they have to be taken seriously. Despite the immensity of the administrative record, plaintiff does not depend wholly upon it. He wants us to use it to pass on cross-motions raising merits issues, but since the oral argument he has written that some depositions will still be necessary.

■ We conclude that the plaintiff's delays in bringing this suit exceed by a wide

margin the longest delay the doctrine of laches will permit. The plaintiff, both before and since the oral argument, has filed a number of motions all of which may be characterized as relating to the merits issues rather than the threshold question of laches. Our conclusion moots them, and accordingly, all are denied. Upon consideration of defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment, and the briefs and arguments of the plaintiff and counsel for defendant, the said cross-motion is denied, defendant's motion is granted, and the petition is dismissed.