**Dale J. WALDORF**

v.

**UNITED STATES.**

No. 69–83C.

United States Claims Court.

June 4, 1985.

Sidney Ezra, Chicago, Ill., for plaintiff.

Denise Butler Harty, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

YOCK, Judge.

The plaintiff, formerly a second lieutenant in the United States Air Force Reserve, brings this military pay action challenging a change in his disability rating from 50 percent to 30 percent and seeking retroactive disability benefits to the date of his permanent retirement at 30 percent disability on January 31, 1972. In April of 1981, the plaintiff filed a complaint in the District Court for the Northern District of Illinois, seeking relief basically identical to the relief that the plaintiff requests from this Court. By a memorandum opinion and order dated January 29, 1983, the district court transferred the plaintiff's action to this Court.

On October 31, 1983, the defendant moved for summary judgment on the grounds that the plaintiff's claim is barred by the statute of limitations and/or by the doctrine of laches. The plaintiff filed a brief in opposition, and the defendant replied. For the reasons set forth herein, the defendant's motion for summary judgment is granted, and the plaintiff's complaint is to be dismissed.

### Facts

The plaintiff began his military career, in June of 1962, as a cadet with the United States Military Academy. Subsequently, the plaintiff was asked to resign for an honors violation, with an effective date of September 10, 1962. In order to complete his required military obligation, on September 12, 1964, the plaintiff enlisted in the U.S. Air Force Reserve and entered the University of North Dakota's Air Force Reserve Officer Training Corps. Upon graduation, the plaintiff was commissioned a second lieutenant in the U.S. Air Force Reserve. The plaintiff was then assigned to the Air Force Institute of Technology, with a duty station as a student at the University of North Dakota Medical School, Grand Forks, North Dakota. In October of 1968, during the fall term of his second year, the plaintiff experienced a professed schizophrenic reaction, resulting in an emergency reassignment from the medical school to a U.S. Air Force Hospital at Sheppard Air Force Base, Texas. Following a psychiatric evaluation, the plaintiff was diagnosed as suffering from a schizophrenic reaction. The attending physician stated in the plaintiff's clinical record dated December 6, 1968, *inter alia*, that:

His prognosis in a military setting is poor at this point while it is probably somewhat better in a civilian setting, although his prognosis in any event depends upon the nature and extent of treatment received. He is competent for pay purposes and to handle his own financial affairs. He has received maximum benefit of hospitalization in a military setting at this time and may be discharged to his own care. He is disqualified from worldwide duty.

A Medical Board Report dated December 10, 1968, concurred in the diagnosis/prognosis and recommended that the plaintiff be considered further by a Physical Evaluation Board (PEB) to determine his fitness for duty. Following a review by a PEB, and with both his concurrence and the concurrence of the Physical Review Counsel (PRC), the plaintiff was placed on the Temporary Disability Retired List (TDRL), with a 50 percent disability rating, effective February 19, 1969.

On July 24, 1970, following a periodic evaluation, a PEB recommended continuation on the TDRL. In that review, the plaintiff was evaluated by a staff psychiatrist as having a schizophrenic reaction "in partial remission," such that the plaintiff was "competent with regard to financial affairs."

On December 7, 1971, the plaintiff was again evaluated by a staff psychiatrist, who noted that although the plaintiff was "somewhat tangenital [sic] in his thinking," he was "largely coherent." The staff psychiatrist found that the plaintiff did not suffer from hallucinations or delusions and that he was oriented as to time, place, and person. Subsequently, on December 13, 1971, a PEB recommended that the plaintiff be permanently retired with a 30 percent disability rating. As a result, in a letter dated December 14, 1971, the plaintiff was advised of the recommended findings of the PEB and of his rights regarding those findings. He could: (1) concur with the recommended findings; (2) disagree with the recommended findings and request an appearance before a formal PEB; or (3) disagree with the recommended findings, waive a formal hearing, and submit a written rebuttal. The plaintiff elected to waive a formal hearing and to submit, instead, a written rebuttal to the PEB's recommended findings. On December 30, 1971, the PRC concurred in the recommended findings of the PEB. On January 10, 1972, the Secretary of the Air Force, pursuant to the provisions of 10 U.S.C. § 1210, approved the recommendations of the PRC and ordered the plaintiff placed on the Permanent Disability Retired List, at a 30 percent disability rating, effective January 31, 1972.

In April of 1981, the plaintiff filed a complaint in the U.S. District Court for the Northern District of Illinois, seeking basically the same relief that he seeks in this action. The district court found that it lacked jurisdiction over the plaintiff's claim and transferred the action to this Court.

The defendant, on October 31, 1983, moved for summary judgment on the grounds that the plaintiff's claim is barred by the statute of limitations and/or by the doctrine of laches. The plaintiff has filed a brief in opposition, and the defendant has replied.

*Discussion*

A. Statute of Limitations

The plaintiff's cause of action accrued on January 31, 1972, the date of his retirement at 30 percent disability. However, he did not file his claim in the district court until April of 1981, over nine years after his cause of action accrued. The relevant statute of limitations, 28 U.S.C. § 2501, provides that:

> Every claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

> \*   \*   \*   \*   \*   \*

> A petition on the claim of a person under legal disability \* \* \* at the time the claim accrues may be filed within three years after the disability ceases.

Recognizing that his claim is otherwise barred by the statute of limitations, the plaintiff asserts that he was under a legal disability through April of 1978, three years before filing his action in the district court.

This six year statute of limitations has long been strictly adhered to in military pay cases by both this Court and its predecessor court, the United States Court of Claims. The Court's strict adherence to

this statute is based on the following reasoning:

> Our statute of limitations is jurisdictional and must be strictly construed to avoid prosecution of stale claims which defendant can be prejudiced in contesting because excessive lapse of time dulls memories, accounts for missing witnesses, and occasions periodic, routine destruction of Government records.

*Kirby v. United States*, 201 Ct.Cl. 527, 539 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). *See also Crown Coat Front Co. v. United States*, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); *Feldman v. United States*, 149 Ct.Cl. 22, 181 F.Supp. 393 (1960); *Dawnic Steamship Corp. v. United States*, 90 Ct.Cl. 537 (1940).

The preeminent case, defining what constitutes a "legal disability" for purposes of tolling the above statute of limitations, is *Goewey v. United States*, 222 Ct.Cl. 104, 612 F.2d 539 (1979). *See also Warren v. United States*, 4 Cl.Ct. 552, *aff'd*, 746 F.2d 1489 (Fed.Cir.1984); *Gerber v. United States*, 2 Cl.Ct. 311 (1983); *Ellis v. United States*, 1 Cl.Ct. 141 (1983).

In *Goewey*, the court discussed the plaintiff's formidable burden of proof in establishing a "legal disability:"

> The law presumes sanity and competency rather than insanity and incompetency. The burden of proving mental incapacity is on the claimant in order to qualify as suffering from a legal disability within the intendment of 28 U.S.C. § 2501. Hardship, inconvenience, or ignorance are not grounds for tolling the statute.
>
> \* \* \* \* \* \*
>
> Only a serious impediment can qualify to suspend running of the statute. The "legal disability" provision of statutes of limitations are designed to provide relief from some personal handicap or impediment affecting the individual litigant and preventing him from bringing a timely suit. Strict construction of "legal disability" is reinforced by *Capoeman v. United States*, 194 Ct.Cl. 664, 440 F.2d

1002 (1971), which observes that the term does not include all kinds of mental conditions. The court held that to toll the statute a legal disability must impair the claimant's access to the court.

\* \* \* \* \* \*

> The term "insane" or of "unsound mind" as used in a statute relating to the effect of disabilities on the statute of limitations means a condition of mental derangement which renders the sufferer incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities.

*Goewey v. United States*, *supra*, 222 Ct.Cl. at 112–14, 612 F.2d at 544–45 (citations omitted).

■ The *Goewey* court noted as well that, in order to establish a legal disability within the ambit of section 2501, a plaintiff must demonstrate that the disability was continuous throughout the period of claimed impairment. *Goewey v. United States*, *supra*, 222 Ct.Cl. at 116, 612 F.2d at 546. Here, the continuous period would have to run from the plaintiff's retirement, on January 31, 1972, until April of 1978. A lucid interval starts the statute running again, and it is not suspended by a recurrence of the disability. *Goewey v. United States*, *supra*, 222 Ct.Cl. at 116, 612 F.2d at 546. In *Goewey*, the court concluded that no continuous disability had been shown, noting specifically that, if the plaintiff was competent to file an application with the Air Force Board for the Correction of Military Records, it was difficult to comprehend why he was not also competent to have filed suit. *Goewey v. United States*, *supra*, 222 Ct.Cl. at 107, 612 F.2d at 541. Thus, a plaintiff must establish that he was under a legal disability continuously, without any lucid periods during which he was capable of caring for his property, transacting business, understanding the nature and effect of his acts, or comprehending his legal rights and liabilities.

Subsequent decisions by both this Court and the Court of Claims have relied on similar acts in finding that the claimants were sufficiently aware of their legal rights to commence the running of the statute. Thus, where a claimant for military pay suffered from schizoid and passive aggressive-type personality disturbances, a request by the claimant to change his discharge was found sufficient to recommence the running of the statute. *Warner v. United States*, 225 Ct.Cl. 717, 718–19 (1980). Also, after noting the claimant's efforts to obtain administrative review of his claim upon his discharge from the U.S. Navy, his periods of employment, and his letters written to various organizations, the court in *Bowman v. United States*, 224 Ct.Cl. 640, 642–43, 650 F.2d 287 (1980), found that the plaintiff had not proffered evidence that would establish a *prima facie* case of legal disability sufficient to avoid the bar of limitations and granted the defendant's motion to dismiss. Finally, a plaintiff's request for benefits from the Veterans' Administration and his appeal to the Army Board for Correction of Military Records were found to be persuasive evidence that as of the date of those actions he was not suffering from a legal disability that would toll the limitations period. *Duvall v. United States*, 227 Ct.Cl. 642, 647–48 (1981). *See also Warren v. United States, supra; Gerber v. United States, supra; Ellis v. United States, supra.*

■ Here, even assuming that the plaintiff suffered from a legal disability at some point during the period in question, the plaintiff's own actions demonstrate that he had lucid periods which would recommence the running of the statute of limitations. First, the plaintiff wrote to the U.S. Air Force contesting the recommended findings of the PEB to decrease his disability rating and permanently retire him. At that time, the plaintiff elected to waive his right to a hearing and, instead, submitted a written rebuttal to the PEB's recommended findings. Second, on June 1, 1972, the plaintiff requested the U.S. Air Force to provide him with a copy of his report of separation. In that request, the plaintiff listed both the dates of his active duty service and his service number. Further, he stated that he was seeking this particular document at his "employers request," since his copy of the document was lost "during moving." Finally, on May 30, 1975, the plaintiff made a more detailed request for his military records. Here, the plaintiff formulated a detailed list of the records he wished to obtain from the U.S. Air Force, stating that these documents were "required by Dept. of Health, Education & Welfare, Social Security Administration for disability benefits." Significantly, the plaintiff's request, on May 30, 1975, sought the records in order to assist him in obtaining disability benefits through the Social Security Administration (SSA).

In addition, the record reflects pertinent communications between the SSA and the plaintiff. Evidently, the plaintiff was having difficulty convincing the SSA that he was entitled to keep the level of disability benefits that he was currently receiving due to his impaired physical condition and/or periods of gainful employment. For example, on June 3, 1975, the plaintiff submitted a "Statement of Claimant" to the SSA in which he threatened to have his attorney enter his case against the SSA if his appeal for benefits was not granted. He also submitted various documents to support his claim and requested the SSA to obtain his medical records from the Veterans' Administration. Further, on August 10, 1975, the plaintiff again wrote a letter to the SSA, Disability Benefits Section, Waukegan, Illinois, wherein he stated that he had taken a position with the Johnson & Johnson Company as a sales trainee in their Surgical Specialty Division but that he was still under psychiatric care. He again mentioned that legal counsel would be available to represent him, if necessary.

Finally, it is clear from the records in this case that the plaintiff was gainfully employed during various periods from 1972 through 1978. In 1973, for instance, a W–2 form in the record indicates that he received $13,713.78 in wages from the Ameri-

can Hospital Supply Corporation, Waukegan, Illinois. Further, in 1975, he was employed as a sales trainee by the Johnson & Johnson Company.

These actions clearly demonstrate the plaintiff's ability to function, to use logic, and to follow established procedures. At the very least, these actions demonstrate that the plaintiff had lucid periods during which he understood his rights and demonstrated his ability to pursue those rights.

Consequently, the plaintiff has misconstrued the degree of disability that one must have in order to satisfy the statute's legal disability requirement. The fact that the plaintiff suffers from a mental condition, which may cause periods of mental disability, is insufficient to toll the statute of limitations. Clearly, the plaintiff had periods of lucidity prior to April of 1978, during which he was capable of handling his financial affairs, of obtaining Government records to assist him in his claim for disability benefits before another Government agency, and of maintaining gainful employment for varied periods of time. He could have also, had he so desired, filed suit in this Court.

Further, the plaintiff's response to the defendant's motion for summary judgment is insufficient to establish a genuine issue of material fact as to the plaintiff's "legal disability." In ruling on a motion for summary judgment, this Court has held that:

It is axiomatic that in ruling on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, which is identical to RUSCC 56, any doubt about whether there is a genuine issue of material fact will be resolved in favor of the non-moving party. And the burden on that party to show there is a genuine dispute about a material fact is not a stringent one. However, once the moving party has produced evidence which apparently establishes a material fact, the non-movant may not discharge his burden by cryptic, conclusory or generalized responses, or by remaining silent. He "must set forth specific facts

showing there is a genuine issue for trial."

*Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983) (citations omitted). *See also Kinetic Structures Corp. v. United States*, 6 Cl.Ct. 387, 392 (1984). Here, the plaintiff has failed to offer anything more than mere conclusory allegations in defense against the defendant's motion for summary judgment. For example, with regard to the defendant's allegation that the plaintiff was not suffering from a "legal disability" on May 30, 1975, when he requested documentation for use in supporting his claim for disability benefits with the SSA, the plaintiff offers only the generalized response that "anyone can go to a social security office for assistance and staff there presumably will both orally inform a claimant what documents are required, and even note them down." As a result, the plaintiff has failed to meet his burden of proof.

Therefore, this Court finds that the plaintiff was not under a continuous legal disability from January 31, 1972, until April of 1978. The statute of limitations having run, this Court lacks jurisdiction to adjudicate the plaintiff's claim.

**B. Doctrine of Laches**

Independent of this Court's decision on the statute of limitations issue, the plaintiff's claim is also barred by the doctrine of laches. The doctrine of laches is a "fairness" doctrine by which relief is denied to one who has unreasonably and inexcusably delayed the assertion of his claim. *Brundage v. United States*, 205 Ct.Cl. 502, 505, 504 F.2d 1382, 1384 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). The two essential elements of laches are an inexcusable delay by the plaintiff in filing suit coupled with prejudice to the defendant as a result of the delay. *Carrasco v. United States*, 215 Ct.Cl. 19, 29 (1977); *Albright v. United States*, 161 Ct.Cl. 356, 362 (1963). The longer the delay by the plaintiff, the less need there is by the defendant to show specific prejudice and the greater is the

burden upon the plaintiff of demonstrating lack of prejudice. *Brundage v. United States, supra,* 205 Ct.Cl. at 509, 504 F.2d at 1386; *Gersten v. United States,* 176 Ct.Cl. 633, 636, 364 F.2d 850, 852 (1966). If laches is to serve any real purpose, the time from the accrual of the claim to the perspective date of judgment must be considered in evaluating the reasonableness of a plaintiff's delay. *Frommhagen v. United States,* 216 Ct.Cl. 1, 5, 573 F.2d 52, 55 (1978). This time period is relevant because "the search for truth is always imperiled with the passage of time." *Brundage v. United States, supra,* 205 Ct.Cl. at 510, 504 F.2d at 1387. The greater the passage of time, the greater is the prejudice to the defendant from the loss of evidence by missing witnesses, human forgetfulness, or lost documents. *Frommhagen v. United States, supra,* 216 Ct.Cl. at 7, 573 F.2d at 56.

■ Here, the plaintiff asserts that his legal disability lasted through April of 1978. However, the plaintiff still delayed in filing this action until April of 1981, despite the fact that, as of 1978, over six years had already elapsed since the date that a competent board had reviewed his disability. Clearly, when the plaintiff's three-year delay is viewed in conjunction with the six years that had already elapsed, the plaintiff's delay of three years becomes inexcusable. Litigation of the plaintiff's claim, at this time, would require the Government to locate and to rely upon the testimony of doctors who examined the plaintiff over ten years ago. Even if the Government is able to locate the doctors who examined the plaintiff prior to his permanent retirement, it is highly unlikely that these doctors would be able to recall the details of their examinations.

As a result, this Court finds, notwithstanding its above decision on the statute of limitations issue, that the plaintiff's claim is likewise barred by the doctrine of laches.

## CONCLUSION

For the above-stated reasons, the defendant's motion for summary judgment is granted, and the complaint is to be dismissed.