**Gloria Annette CHANEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–519 C.

United States Court of Federal Claims.

Feb. 2, 2007.

Gloria Annette Chaney, pro se, Glendale, AZ, plaintiff.

Tara K. Hogan, Trial Attorney, Donald E. Kinner, Assistant Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Maj. Tracey Rockenbach, Department of the Air Force, Rosslyn, VA, of counsel.

*OPINION AND ORDER*

GEORGE W. MILLER, Judge.

This matter is before the Court on defendant's motion to dismiss for lack of jurisdiction on the ground that plaintiff's complaint is time-barred by the statute of limitations, or, in the alternative, motion for judgment on the administrative record. Because the record shows that plaintiff filed her complaint four or more years after the expiration of the statute of limitations and the Court concludes that plaintiff does not qualify for tolling of the statute of limitations, defendant's motion to dismiss for lack of jurisdiction is GRANTED. Accordingly, defendant's motion for judgment on the administrative record is DENIED as moot. The Clerk is directed to enter judgment dismissing plaintiff's complaint.

## *BACKGROUND*

Plaintiff enlisted in the United States Air Force on January 27, 1975. Admin. R. at 13. She served a distinguished career and received numerous medals and awards for good service. *Id.* Plaintiff's complaint[1] asserts that she was stationed overseas for 18 months in support of Operation Desert Storm in 1990–91. Compl. at 9. In anticipation of her return to the continental United States, the Air Force initially granted plaintiff a "state side preference" and assigned her to March Air Force Base ("March AFB") in California. Compl. at 9; Attach. to Compl., at tab 4, pg. 1. In January of 2001, however, the Air Force chose plaintiff for "selective retraining." Attach. to Compl. at tab 4, pg. 2. "Selective retraining" is a form of "involuntary retraining used to fill a specific, predetermined need, usually resulting from unsuccessful voluntary efforts. Concurrence of the selectee is not required." Air Force Instruction 36–2626, Airman Retraining Program 30 (July 1, 1999). As a consequence of her retraining, rather than being assigned to March AFB, the Air Force "diverted" plaintiff to Wurthsmith Air Force

1. Whenever possible, the Court relies on the administrative record to establish the relevant facts. Because defendant has withheld certain information from the administrative record—in particular, plaintiff's personnel file—the Court relies on the undisputed facts alleged in the compliant when necessary.

Base ("Wurthsmith AFB") in Michigan. Attach. to Compl. at tab 4, pg. 3.

In September and October of 1991—within a few weeks of returning to the United States and relocating her family to Wurthsmith AFB—plaintiff attended Keesler Technical Training Center in Mississippi where she was re-trained for her new classification. Attach. to Compl. at tab 4, pg. 4. Plaintiff finished the course in the top ten percent of her class and earned the distinction of "Honor Graduate." Attach. to Compl. at tab 4, pg. 5. Shortly after returning to Wurthsmith AFB, plaintiff was examined under the Nuclear Weapons Personnel Reliability Program ("PRP"), as was required by her new job classification. Individuals must have an "S–1" psychiatric rating under the mandatory PRP requirements.[2] Air Force Regulation 35–99, Nuclear Weapons Personnel Reliability Program § 2–1(a) (Aug. 30, 1991). Plaintiff, however, was diagnosed with an "adjustment disorder" and assigned an S–2 psychiatric rating. Attach. to Compl. at tab 4, pg. 6. On December 13, 1991, the Chief of Flight Medicine recommended that plaintiff be permanently decertified under the PRP. *Id.* In early 1992, the decision to permanently decertify plaintiff under the PRP became final. *Id.* at tab 4, pg. 7. After decertification, plaintiff was restored to her previous job classification. Append. to Def.'s Mot. at 119.

On February 12, 1992, plaintiff applied for early separation. Append. to Def.'s Mot. at 100. On February 13, 1992, plaintiff's unit commander recommended approval of her request for early separation, and the request was formally approved on February 14, 1992. *Id.* On February 13, 1992, plaintiff was diagnosed with lower back strain and was restricted from "lifting greater than 20–30 pounds, running aerobics, [and] repeated bending." Attach. to Compl. at tab 8 (1992), pg. 3. On February 19, 1992, plaintiff suffered a miscarriage requiring surgery. Plaintiff asserts that the miscarriage in concert with the recent developments in her career left her with a weakened mental capacity. Attach. to Compl. at tab 8 (1992), pg. 12.

As part of the separation process, plaintiff was given the opportunity to request a final medical examination or to decline such an examination. On March 25, 1992, plaintiff affirmatively requested a separation examination. Attach. to Compl. at tab 4, pg. 8A. Plaintiff's medical records indicate that plaintiff received her examination on April 9, 1992. Attach. to Compl. at tab 8 (1992), pg. 25–27. The results of this examination, however, are not discernable from the record. The examining physician's notations indicate that he recorded the examination results on a form "SF 88." *Id.* at tab 8 (1992), pg. 25. This form is not included within the record and defendant states that it is "missing." *See* Def.'s Mot at 16.

On June 15, 1992, plaintiff was honorably discharged from the Air Force having attained the rank of Master Sergeant. Attach. to Compl. at tab 1, pg. 1. As part of her separation package, plaintiff received a lump sum payment of $60,858.72. *Id.* The Department of Veterans Affairs ("VA") rated plaintiff's disabilities at 30 percent on the day after plaintiff was discharged. *Id.* at tab 4, pg. 19. Ten percent of her disability was attributable to general anxiety disorder and mild depression, ten percent was attributable to lower back strain, and ten percent was attributable to the loss of one of her ovaries and one fallopian tube, which were surgically removed in 1977.[3] *Id.* at tab 4, pg. 18.

---

2. In the most recent Air Force regulations on the subject, an S–1 psychiatric rating is defined as "[d]iagnosis or treatment result[ing] in no impairment or potential impairment of duty function, risk to the mission or ability to maintain security clearance." 4 Air Force Instruction 48–123, attach. 3 (June 5, 2006). An S–2 rating is defined as "World Wide Qualified and diagnosis or treatment result in low risk of impairment or potential impairment that necessitates command consideration of changing or limiting duties." *Id.*

3. Air Force regulations governing the eligibility for disability retirement differ from the VA disability rating system in one significant and relevant aspect. The loss of an individual's reproductive organs is not a cognizable disability under the Air Force regulations. Air Force Regulation 35–4, attach. 2, pg. 95 (June 1989) ("[The VA regulations] specif[y] that 'excision of the ... ovaries ... before the natural menopause is considered disabling.' In this context 'disabling' refers to eligibility for VA compensa-

After her separation, plaintiff's physical and mental health continued to deteriorate.[4] Family members observed plaintiff to be losing weight and becoming increasingly withdrawn and less stable. *Id.* at tab 4, 33–34. As a consequence of the VA disability rating, plaintiff was eligible for disability pay. However, on April 12, 1993, the VA advised plaintiff that pursuant to VA regulations [5] she could not receive any disability pay until the VA fully recouped her entire separation payment—including the amounts that she had already paid in federal taxes—as was required by law.[6] Attach. to Compl. at tab 4, pg. 15 ("The amount ... [that plaintiff] received as separation pay must be deducted from [her] disability compensation, since [plaintiff could] not receive both benefits. When that amount has been recouped, [plaintiff's] VA benefit will begin."). On August 17, 1993, the VA further advised plaintiff that because disability payments are non-taxable, the VA understood that plaintiff may be eligible to obtain a refund from the Internal Revenue Service ("IRS") for any taxes paid on the separation bonus. Attach. to Compl. at tab 4, pg. 16. Following up on this advice, plaintiff filed an amended tax return with the IRS on August 7, 1994. Attach. to Compl. at tab 5, pg. 16.

In June of 1995, plaintiff filed her initial claim with the Air Force Board for Correction of Military Records ("Board"), requesting that the Board amend her records to show a disability retirement. Admin. R. at 4. Plaintiff argued that she should have been offered a disability retirement in light of her condition, offering evidence that the VA rated her 30 percent disabled within 30 days of her discharge. Admin. R. at 9, 10–11.

Plaintiff also provided evidence that the VA disability rating of her depression alone fluctuated between 30 percent and 100 percent. Admin. R. at 5, 10–11.

In June of 1996, the IRS advised plaintiff that she was not entitled to a refund of the taxes paid on her separation bonus because her discharge papers did not indicate that she was separated for medical reasons as the IRS asserted was necessary to claim a refund. *Id.* at tab 5, pg. 20. The IRS advised plaintiff that she was eligible for a tax deduction or tax credit each year, equal to the amount recouped annually by the VA. *Id.* at tab 5, pg. 21 (advising plaintiff that if the amount of the separation payment recouped "equals $3,000.00 or less per year, [she could] take the repayment amount as an itemized deduction ... if [she] itemize[d]. If the [amount recouped] is over $3,000, [she could] take a deduction for the amount repaid, or [she could] take a credit against [her] tax.").

On August 28, 1996, the Board issued its decision denying plaintiff's request to amend her records. In reaching its decision the Board relied on two advisory opinions by Air Force officials concluding there was insufficient evidence in the record to support correcting plaintiff's records. Admin. R. at 15–18. It is unclear whether, at the time that the advisory opinions were drafted, plaintiff's record of her separation examination—*i.e.,* form SF 88—was present within her file or whether it had already been lost, *see supra* page ——. On December 11, 1996, plaintiff sought reconsideration of the Board's decision. Admin. R. at 109. The Board reaffirmed its decision on April 18, 1997, advising plaintiff that she could request a further reconsideration, "but such a request must be

---

tion, NOT for active military service. These conditions will not be rated.").

4. On December 5, 1994, plaintiff's VA disability rating was increased to 100 percent as a result of her anxiety disorder and depression. Plaintiff's VA disability rating was reduced to 40 percent on February 1, 1995, and it has fluctuated between 40 percent and 100 percent thereafter. Attach. to Compl. at tab 4, pg. 18.

5. The VA regulation in force in 1995 provided that "[a] veteran who has received separation pay may receive disability compensation for disability incurred in or aggravated by service prior

to the date of the receipt of separation pay subject to recoupment of the total amount received as separation pay." 38 C.F.R. § 3.700(a)(5)(i) (1995).

6. Congress subsequently amended the statute dealing with the recoupment rule to specify that monies paid out of separation payments to satisfy federal income taxes are not subject to recoupment. 10 U.S.C. § 1174(h)(2). The amendment, however, does not apply retroactively and is only available for separation payments made after September 30, 1996. Pub.L. 104–201, § 653(b), 110 Stat. 2422, 2583 (Sept. 23, 1996).

accompanied by newly discovered relevant evidence that was not reasonably available at the time of [her] original application." *Id.* at 143. On May 20, 1997, plaintiff sought a second reconsideration of the Board's decision. *Id.* at 140. Again, the Board upheld its original decision, denying plaintiff's request on September 29, 1997. *Id.* at 138. On April 26, 2000, plaintiff advised the Board that she had contacted the United States Court of Federal Claims ("CFC") and was going to appeal the Board's decision to the CFC. *Id.* at 208. Plaintiff included a draft complaint. *Id.* at 206–07. On July 12, 2000, the Board advised plaintiff that it would no longer respond to her correspondence. *Id.* at 212.

Plaintiff did not actually file a complaint with the Court until July 12, 2006. As explained by plaintiff, she "became aware of the statute of limitation [sic] in May 2006 . . . [and] assumed the last correspondence from the board [in 2000] began the time." Pl.'s Resp. to Def.'s Mot. at 1. Plaintiff argues that the Board based its decision on an incomplete record that lacked the results of her separation examination. Compl. at 10; Pl.'s Surreply at 2; Pl.'s Filing of Sept. 14, 2006. Plaintiff further argues that her consent to separation was involuntary because she was under duress as a result of her weakened mental capacity and because the Air Force failed to inform her of the VA's recoupment rule. Compl. at 9–10, 12. Last, plaintiff argues that her separation was inconsistent with existing law, because the authority relied upon to grant her release was not actually enacted until four months after her separation. Compl. at 11. Plaintiff requests that her records be amended to reflect a disability retirement or that she be reinstated to active duty for 30 months at which point she would eligible for retirement. Compl. at 12.

On September 14, 2006, plaintiff filed supplementary evidence in the form of a letter from the VA stating that it did not have a copy of her separation examination. Defendant filed a motion to dismiss for lack of jurisdiction, or in the alternative a motion for judgment on the administrative record on September 25, 2006. Plaintiff filed a response in opposition to defendant's motion on October 19, 2006. Defendant filed a reply in support of its motion on November 2, 2006. Plaintiff filed a surreply, by leave of the Court, on November 28, 2006.

### *DISCUSSION*

#### 1. Standard of Review

■ Defendant has filed a motion to dismiss for lack of jurisdiction of the ground that plaintiff failed to file her complaint within the six-year statute of limitations period set forth in 28 U.S.C. § 2501 (2000). Considerable debate has arisen as to whether a motion to dismiss on the ground that the complaint is time-barred by the statute of limitations should come as a motion to dismiss for failure to state a claim upon which relief can be granted or as a motion to dismiss for lack of jurisdiction.[7] *Compare Ariadne Fin. Services Pty. Ltd. v. United States* 133 F.3d 874, 878 (Fed.Cir.1998) ("[A] time bar . . . does not affect the subject matter jurisdiction of the Court of Federal Claims"); *Borough of Alpine v. United States,* 923 F.2d 170, 170 n. 1 (Fed.Cir.1991) ("The Claims Court has and will continue to have jurisdiction over the subject matter [of plaintiff's case]. However, in this case, because of its failure to file a timely [complaint], [plaintiff] was not entitled to have the Claims Court exercise its subject matter jurisdiction."); *Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986) ("[The Court] clearly *has* subject matter jurisdiction [but a Tucker

---

7. The Court finds Chief Judge Damich's discussion in *Grass Valley Terrace v. United States,* 69 Fed.Cl. 341, 348 (2005), particularly useful in understanding the long history of the conflicting authority governing statute of limitation issues. In *Grass Valley Terrace,* the Chief Judge ultimately concluded that a motion to dismiss a case as time-barred under the statute of limitations is properly analyzed as a RCFC 12(b)(6) motion to dismiss for failure to state a claim upon which

relief can be granted as opposed to a RCFC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Although the Court finds the Chief Judge's reasoning compelling, it understands that it is bound by *Martinez v. United States,* 333 F.3d 1295 (Fed.Cir.2003) (en banc), and *John R. Sand & Gravel Co. v. United States,* 457 F.3d 1345, 1355 (Fed.Cir.2006), discussed *infra.*

Act claim] must nonetheless be dismissed [when] the period during which the United States had consented to be sued had expired."); *with, e.g., Frazer v. United States,* 288 F.3d 1347, 1349 (Fed.Cir.2002) ("[T]he appellants' suit was 'out of time.' Because § 2501 is a jurisdictional condition on the government's waiver of sovereign immunity, the dismissal for lack of subject matter jurisdiction is [affirmed]."); *Caguas Cent. Fed. Sav. Bank v. United States,* 215 F.3d 1304, 1310 (Fed.Cir.2000) ("The complaint in this case was not filed within six years of the accrual of the claims asserted.... Accordingly, the Court of Federal Claims had no jurisdiction to entertain the complaint, and properly dismissed it for lack of jurisdiction."); *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) ("We agree with the Court of Federal Claims that the [plaintiff's] claims accrued [more than six years prior to the filing of the complaint], and are therefore without the jurisdiction of that court as statutorily time-barred.").

The question whether a time-barred complaint should be addressed by a motion to dismiss for lack of jurisdiction or a motion to dismiss for failure to state a claim appeared to have been resolved after *Martinez v. United States,* 333 F.3d 1295 (Fed.Cir.2003) (en banc). In *Martinez,* the United States Court of Appeals for the Federal Circuit ("Federal Circuit") held that "[i]t is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature." *Id.* at 1316 (citing *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Frazer,* 288 F.3d at 1351; *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed.Cir.1988); *Jones v. United States,* 801 F.2d 1334, 1335 (Fed.Cir. 1986)). However, within a year of issuing its en banc opinion in *Martinez,* the Federal Circuit appeared to have retreated from the position that the expiration of the statute of limitations affects this Court's jurisdiction to hear a case:

> The trial court characterizes the ground of its decision as being a lack of subject matter jurisdiction, and it is true that we have stated that the statute of limitations is jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act. However, the Court of Federal Claims certainly has subject matter jurisdiction over [the] claims ..., and it had jurisdiction over this case to determine when ... [plaintiff's] claim accrued. The most precise ground for the trial court's decision here therefore would seem to be that [plaintiff] failed to make its claim within the required limitations period—that is not a question of subject matter jurisdiction of the court.

*Venture Coal Sales Co. v. United States,* 370 F.3d 1102, 1105 (Fed.Cir.2004) (quotes omitted) (citations omitted).

In its most recent opinion on this issue, the Federal Circuit reaffirmed its position that the statute of limitations in § 2501 is "jurisdictional." *John R. Sand & Gravel Co. v. United States,* 457 F.3d 1345, 1354–55 (Fed. Cir.2006), *reh'g en banc denied* (Nov. 30, 2006). In *John R. Sand & Gravel,* the government did not raise the issue of the statute of limitations on appeal; rather, the issue was raised by an *amicus* consisting of a dozen corporations. *Id.* at 1352 & n. 9. Nonetheless, the Federal Circuit held that because the statute of limitations is jurisdictional in nature, it was required to perform its own independent examination into whether the claimant met the requirements of the statute of limitations, irrespective of whether the government raised the issue on appeal. *See id.* at 1353–54.

In a dissenting opinion, Judge Newman disagreed with the majority holding, arguing that it should not have addressed the statute of limitations issue *sua sponte* because "[c]ontrary to the position of the panel majority, the limitations period is not itself a matter of jurisdiction." *Id.* at 1362 (Newman, J., dissenting) (citing *Ariadne,* 133 F.3d at 878 (Fed.Cir.1998); *Grass Valley,* 69 Fed. Cl. at 347; RCFC 8(c)). The majority considered Judge Newman's arguments, but based on a review of the case law, concluded that "the six-year statute of limitations of section 2501 enjoys a longstanding pedigree as a jurisdictional requirement." *Id.* at 1355.

Accordingly, the majority was "unwilling to disturb the well-settled law that section 2501 creates a jurisdictional condition precedent for suit in the Court of Federal Claims, which may not be waived by the parties." *Id.* Not withstanding the inconsistent authority, in light of the en banc decision in *Martinez* and the recent decision in *John R. Sand & Gravel,* the Court concludes that a motion to dismiss a complaint as time-barred by the statute of limitations is properly treated as a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1).

All federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir. 1998). "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan,* 540 U.S. 443, 452–53, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (citing U.S. CONST. art. III, § 1). "The jurisdiction of the Court of Federal Claims is prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings,* 142 F.3d at 1461. Such consent to be sued "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). If at any time the Court, on motion or *sua sponte,* concludes that it lacks subject matter jurisdiction over a claim, it must dismiss the claim. RCFC 12(h)(3). "[T]he court may consider evidence outside the pleadings to resolve the issue" whether it possesses jurisdiction over the subject matter of the claims alleged in the complaint.[8] *Aerolineas Argentinas v. United States,* 77 F.3d 1564, 1572 (Fed.Cir.1996). When ruling on a motion to dismiss for lack of subject matter jurisdiction, "the allegations of the complaint should be construed favorably to the pleader, to the end that the court must accept as true the facts alleged in the complaint." *Gajic–Stajic v. United States,* 36 Fed.Cl. 422, 423 (1996) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). However, once subject matter jurisdiction has been brought into question, as it has in this case, not only may the court consider evidence outside the pleadings, but plaintiff bears the burden of persuasion that subject matter jurisdiction exists.[9] *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). Because plaintiff is appearing pro se, her pleading is "held to 'less stringent standards than formal plea dings drafted by lawyers,' " and accordingly, such pleadings are construed "liberally." [10] *McSheffrey v. United States,* 58 Fed.Cl. 21, 25 (2003) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). "This latitude, however, does not relieve a pro se plaintiff from meeting jurisdictional requirements." *Bernard v. United States,* 59 Fed.Cl. 497, 499 (2004), *aff'd,* 98 Fed.Appx. 860 (Fed.Cir. 2004), *reh'g denied.*

### 2. Statute of Limitations

"Statutes of limitation are vital to the welfare of society and are favored in the law." *United States v. Oregon Lumber Co.,* 260 U.S. 290, 299, 43 S.Ct. 100, 67 L.Ed. 261 (1922) (quoting *Wood v. Carpenter,* 101 U.S. 135, 139, 25 L.Ed. 807 (1879)). They are not mere "technical" rules, but rather are "substantial and meritorious." *Id.* Statutes of limitations serve an important role in promoting justice by "protecting parties from

---

8. In contrast, when entertaining a motion to dismiss for failure to state a claim upon which relief can be granted, the Court is confined to a consideration of the allegations in the compliant; if defendant seeks to present matters outside the complaint and such matters are not excluded by the Court, "the motion shall be treated as one for summary judgment and disposed of as provided by RCFC 56." RCFC 12(b).

9. In contrast, "[a] trial court should not dismiss a complaint for failure to state a claim unless it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " *Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.2002) (quoting *Ponder v. United States,* 117 F.3d 549, 552 (Fed.Cir.1997)).

10. In this case, even though plaintiff was not represented by counsel, plaintiff's complaint, its voluminous documentary attachments, and plaintiff's subsequent filings set forth a thorough and complete statement of the facts and law supporting plaintiff's claims and responding to defendant's contention that the claims are time-barred.

the prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth." *Id.* at 300, 43 S.Ct. 100 (quoting *Riddlesbarger v. Hartford Ins. Co.*, 7 Wall. 386, 74 U.S. 386, 390, 19 L.Ed. 257 (1869)). The expiration of the applicable statute of limitations bars a plaintiff's claims "without regard to whether the claim would otherwise be meritorious." *United States v. Dalm*, 494 U.S. 596, 610, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990).

■ Section 2501 of Title 28 provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues" except "[a] petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." For wrongful discharge claims, "the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003). "[C]laims of entitlement to disability retirement pay ... accrue [when] the appropriate board either finally denies such a claim or refuses to hear it." *Real v. United States*, 906 F.2d 1557, 1560 (Fed.Cir.1990) (citing *Friedman v. United States*, 310 F.2d 381, 159 Ct.Cl. 1 (1962)). "The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event." *Id.* Subsequent reconsideration requests do not toll the statute of limitations or create new claims. *Id.* Here, plaintiff's wrongful discharge claim accrued when she was discharged in 1992, and hence, the statute of limitations for that claim expired in 1998. Plaintiff's claim for disability retirement pay accrued upon the Board's denial of her initial request to amend her records in 1996, and hence, the statute of limitations for that claim expired in 2002. Plaintiff filed her complaint on July 12, 2006, well beyond the expiration of the statute of limitations with respect to both claims, unless she can show that she was under "legal disability" at the time that her claims accrued.

■ "To toll the statute of limitations a legal disability must impair the claimant's access to the court." *Bond v. United States*, 43 Fed.Cl. 346, 349 (1999) (quoting *Bennett v. United States*, 36 Fed.Cl. 111, 113 (1996)). Accordingly, in order to show a legal disability, plaintiff must demonstrate that she was "incapable of caring for [her] property, of transacting business, of understanding the nature and effect of [her] acts, and of comprehending [her] legal rights and liabilities." *Id.* (quoting *Bennett*, 36 Fed.Cl. at 114). Plaintiff's disability must be "continuous throughout the period of claimed disability." *Id.* (quoting *Waldorf v. United States*, 8 Cl. Ct. 321, 324 (1985)). The statute of limitations begins to run the instant that plaintiff regains legal capacity. *Id.* (citing *Coon v. United States*, 30 Fed.Cl. 531, 539 (1994)). If, after gaining legal capacity, plaintiff at any time relapses into a legal disability, the statute of limitations is not tolled and continues to run. *Id.* (citing *Coon*, 30 Fed.Cl. at 539).

■ Here, plaintiff must demonstrate that she was under continuous legal disability from the time her claims accrued in 1992 or 1996 until 2003, three years prior to the date she filed her complaint with the Court. Although the record establishes that plaintiff suffered serious impairments, it is clear from the record that plaintiff has intermittently possessed the capacity to pursue her legal claims before the Board. If plaintiff possessed the capacity to pursue her claims before the Board, she necessarily had the capacity to understand the nature of her legal rights. Accordingly, the Court declines to toll the statute of limitations pursuant to 28 U.S.C. § 2501.

### CONCLUSION

Although the Court sympathizes with plaintiff's situation, plaintiff's complaint comes too late and the Court is without jurisdiction to hear her claims. Accordingly, for the above reasons, defendant's motion to dismiss is GRANTED. Defendant's motion for judgment on the administrative record is DENIED as moot. The Clerk is directed to

enter judgment dismissing plaintiff's complaint without prejudice.

IT IS SO ORDERED.