Sgt. Anthony W. STEINER, Retired

v.

The UNITED STATES.

No. 655–83C.

United States Claims Court.

Jan. 3, 1986.

---

Donald C. Holmes, Washington, D.C., for plaintiff. Crowell & Moring, Washington, D.C., of counsel.

Stephen R. Bergenholtz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. Lt. Col. Charles R. Fulbruge III, Major Thomas R. Folk and Major Marshall M. Kaplan, Dept. of the Army, Washington, D.C., of counsel.

## OPINION

MEROW, Judge:

This military pay controversy comes before the court on lengthy, but well briefed, dispositive motions filed by the parties and oral argument. At issue is whether plaintiff has established a claim(s) within the court's jurisdiction for active duty status and pay for the period from June 1974 until March 1976, and for increased disability retirement compensation thereafter.

### Facts

From the extensive record filed in this matter, certain undisputed facts emerge.

Plaintiff entered the United States Army in October 1969 and trained as a light infantryman. In July 1970, while serving in Vietnam, he received serious multiple fragment wounds stemming from a near hit of a 120 mm mortar round. Of relevance to the instant litigation, plaintiff suffered serious damage to his left knee which required surgery. Plaintiff was evacuated, via Japan, to a hospital in New York. After treatment there, he returned to duty in November 1970.

In September 1971 plaintiff left active duty and became a member of the United States Army Reserves. In 1972 he applied for disability benefits from the Veterans Administration (VA) and was awarded a 40 percent disability based upon his wounds and an anxiety neurosis. Plaintiff continued to participate in Reserve training.

On June 19, 1974 plaintiff reinjured his left knee while on active duty for training (ADT) with the Reserves under orders limiting his active duty to a period of less than 30 days. He was initially treated at the Naval hospital, Portsmouth, Virginia, where x-rays were taken and a cast put on his leg. Upon the expiration of plaintiff's ADT orders on June 29, 1974, he returned to New York and, over the following months, made regular visits to the United States Army hospital at West Point near his residence.

Plaintiff continued to have difficulties with his knee injury to the extent that he was separated from his civilian postal clerk position because he could not perform all the duties required. He sought private medical assistance and made visits to the VA hospital in Newark, New Jersey. Eventually, with Congressional assistance, in March 1975 he was able to obtain admission to Patterson Army hospital, Fort Monmouth, New Jersey. He was placed in patient status, but was not ordered to active duty. It was promptly determined that knee surgery was required and on March 17 and 19, 1975 military doctors removed two metal fragments and associated deposits which were from his 1970 wound.

During the night of March 31, 1975 while under sedation and a full leg cast, plaintiff fell out of his hospital bed and struck the right side of his head, leaving him unconscious and bruised. After this fall, Sergeant Steiner began to experience headaches. Also, several seizures plaintiff suffered were noticed by patients in the hospital at this time.

On July 7, 1975 a Physical Evaluation Board (PEB) found plaintiff unfit for further military service stemming from his knee injury and recommended a combined disability rating of 30 percent, placement

on the Temporary Disability Retirement List (TDRL), and a reexamination in 1977.

On November 12, 1975 plaintiff, represented by counsel, appeared before a formal PEB. Among other items, the circumstances concerning his fall from bed and resulting head injury were presented to the board. The material presented included a November 11, 1975 "Addendum" narrative summary of the bed-fall matter, set forth as "problem # 2." Also included was a report by Martin N. Herman, M.D., Monmouth Medical Center, covering a neurologic examination of plaintiff including a brain scan and EEG. This formal PEB found plaintiff to be unfit for further military service "because of impairment to his left knee as described above, * * *." The "problem # 2" head injury matter was among those the board noted "were considered and found not ratable." The board recommended a combined rating of 30 percent with placement on the TDRL and reexamination during May 1977.

On May 12, 1976 Sergeant Steiner was discharged from Patterson Army hospital and was placed on the TDRL. Pursuant to law, for a person in plaintiff's status, the minimum amount receivable while on TDRL was 50 percent, and the maximum amount receivable was 75 percent, of monthly basic pay. 10 U.S.C. §§ 1205, 1401. Given his 30 percent rating, plaintiff received 50 percent of his basic monthly pay.

During his period of hospitalization, Sergeant Steiner had been required to perform certain work such as running a photocopy machine. He received some compensation as a result of his "patient" status, but did not obtain active duty pay and was not on active duty orders.

On August 10, 1977 plaintiff again appeared before a formal PEB where he was represented by counsel. Plaintiff requested a permanent disability retirement rating based upon a number of problems, including those stemming from his 1975 fall from bed and his left knee situation. The board found plaintiff unfit and recommended a combined disability rating of 30 percent

and permanent retirement based only upon impairment of his left knee and a mild anxiety neurosis. Army orders were issued on September 26, 1977 removing plaintiff from TDRL on October 31, 1977 and providing for his permanent retirement on 30 percent disability as of November 1, 1977.

In 1976 Sergeant Steiner had filed an application with the Army Board for the Correction of Military Records (ABCMR). Among the relief sought was correction of his active duty time by adding the period from the expiration of his ADT in June 1974 to his March 12, 1976 inclusion on the TDRL and correction of his medical board. This application did not progress pending submission of a brief by plaintiff's counsel.

On February 25, 1980 plaintiff reapplied to the ABCMR. He sought to have his disability rating increased to 100 percent based upon seizures asserted to result from the 1975 bed fall, and to have his records changed to show he was on active duty from June 29, 1974 to March 12, 1976.

With respect to the disability rating, the ABCMR obtained advisory opinions from the requisite Army organizations. These organizations considered the medical records and reported unfavorably to plaintiff's position. With respect to the active duty question, the ABCMR obtained a legal opinion that the Army lacked statutory authority to place a person in plaintiff's status on active duty for the time period in question. The ABCMR denied relief.

Plaintiff filed his complaint in this court on October 28, 1983, seeking all pay and allowances stemming from his claimed active duty status during the period of June 29, 1974 until March 12, 1976 and a 100 percent disability rating as a result of his 1975 bed-fall injury.

*Discussion*

■ Defendant asserts that plaintiff's claims are barred by the statute of limitations, 28 U.S.C. § 2501. Plaintiff argues to the contrary. In this court, the statute of limitations is jurisdictional. *Soriano v.*

*United States,* 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957). Whether the merits of plaintiff's claims can be addressed depends upon whether suit was filed "within six years after such claim first accrues." 28 U.S.C. § 2501.

■ Claims first accrue, for the purpose of determining this court's jurisdiction, when all events have occurred which fix the government's liability and entitle the claimant to institute an action. *Goeppner v. United States,* 3 Cl.Ct. 345, 347 (1983), *aff'd without op.,* 732 F.2d 168 (Fed.Cir. 1984); *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225 (1964).

■ With respect to plaintiff's claim for active duty pay and status for the period from June 29, 1974 until March 12, 1976, all events prerequisite to a suit occurred by the end of March 1976. Resort to an administrative forum, such as the ABCMR, was a permissive step which did not serve to toll the running of the statute of limitations. *See Bruno v. United States,* 214 Ct.Cl. 383, 556 F.2d 1104 (1977); *Hannon v. United States,* 3 Cl.Ct. 89 (1983), *aff'd without op.,* 732 F.2d 168 (Fed.Cir.1984); *Rumph v. United States,* 228 Cl.Ct. 855, 858 (1981). Plaintiff's complaint, filed October 28, 1983, was instituted more than six years after this active duty claim first accrued.

■ With respect to plaintiff's claim for a 100 percent disability rating, different considerations are involved. A claim for disability pay does not first accrue until a retirement board (or equivalent, such as a correction board) with authority to make a decision either decides or refuses to decide the claimant's entitlement to such pay.

---

1. Even if the subsequent August 10, 1977 PEB decision were to be considered as the point of claim accrual, suit would not have been filed within the required six year period. Plaintiff points to the permanent retirement orders, effective November 1, 1977, as the date to accrue the claim, but case law has based first accrual

*Friedman v. United States,* 159 Ct.Cl. 1, 310 F.2d 381 (1962), *cert. denied sub. nom. Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); *Jamison v. United States,* 9 Cl.Ct. 297 (1985).

■ The issue as to entitlement to requisite additional compensation for the 1975 bed-fall matter was before the November 11, 1975 PEB. Relief was denied. Had disability been rated 100 percent by the PEB, compensation while plaintiff was on the TDRL would have exceeded the 50 percent obtained. 10 U.S.C. § 1401. With the PEB's decision not to rate the head injury and the resulting lesser compensation received, all events prerequisite to a suit had occurred.

Plaintiff's October 28, 1983 complaint was initiated in this court more than six years after the 100 percent disability claim first accrued.[1]

### Conclusion

In the above circumstances, as neither of the claims plaintiff advances was initiated within the time allowed by 28 U.S.C. § 2501, and the court lacks jurisdiction over them, it is ORDERED that defendant's motion for summary judgment is granted and final judgment shall be entered dismissing the complaint, with each party to bear his or its own costs.

---

on the date of the initial board decision, not on any orders which may then ensue. *See Friedman v. United States, supra; Bruno v. United States,* 214 Ct.Cl. 383, 556 F.2d 1104 (1977).