**Wayne H. COON, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 92–126C.

United States Court of Federal Claims.

March 11, 1994.

J. Ransdell Keene, Shreveport, LA, attorney of record for plaintiff.

Deborah A. Brinley, Washington, DC, with whom was Asst. Atty. Gen., Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

This military pay case is before the United States Court of Federal Claims[1] on defendant's motion to dismiss for lack of subject matter jurisdiction, filed on April 21, 1992, and, alternatively, on the parties' cross-motions for summary judgment filed on November 30, 1992, and January 12, 1993. Defendant's primary motion to dismiss asserts that plaintiff's claims for an increase in disability retirement compensation and retroactive promotion to the rank of major with back pay,[2] are barred by the statute of limitations imposed under 28 U.S.C. § 2501.[3] For the

---

1. The predecessor United States Claims Court was renamed the United States Court of Federal Claims pursuant to enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992).

2. Plaintiff's claims for money damages arise under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491.

3. Section 2501 states, in relevant part, that "Every claim of which the United States Court of

reasons outlined hereinafter, we find that plaintiff has failed to comply with the requirements of § 2501 with respect to each claim. Defendant's motion to dismiss is, accordingly, granted, and plaintiff's claims are dismissed as time-barred. Given such, our ruling obviates the need to consider the parties' cross-motions for summary judgment.

*Background*

Plaintiff entered the U.S. Air Force in 1960. On October 1, 1966, after six years of service, plaintiff developed spondylosis of the spine with related peripheral neuropathy. These back problems became so severe that, on April 12, 1974, they caused plaintiff to retire from military service after approximately 14 years with an approved 40 percent disability retirement compensation rate. Plaintiff's 40 percent disability rating was recommended by a Physical Evaluation Board ("PEB") that examined him immediately *prior* to discharge. The PEB issued a report on March 14, 1974, which found that plaintiff's back injury was permanent and rendered him *unfit for service.* In addition to the unfortunate consequences stemming from his physical ailments, plaintiff also fell from the promotion track during his final four years of service. While apparently eligible for consideration for promotion to the rank of major during these years, he remained at the rank of captain until retirement.[4]

Following his separation from military service in April 1974, plaintiff's health apparently deteriorated. Thereafter, he sought medical help for certain physical and mental problems in 1975 after his wife began to notice episodes of strange behavior with increasing frequency. As a consequence, plaintiff was eventually admitted to the psychiatric ward of a veterans hospital for a period of a month in 1976, where he received extensive medical attention for his condition. The medical records of his various hospital visits from this period report that plaintiff exhibited acute paranoid behavior, wherein he insisted, for instance, that the Air Force had drugged him with LSD, and that friends and family members were not to be trusted. Also, during this general period, plaintiff sought and obtained a 100 percent medical disability rating from the Social Security Administration ("SSA") in 1975, and, thereafter, a similar 100 percent disability rating from the Veterans Administration ("VA") in 1978.

In view of the foregoing, several years later, on September 23, 1986, plaintiff filed an application for correction of his military records with the Air Force Board for Correction of Military Records ("AFBCMR") under the provisions of 10 U.S.C. § 1552. Plaintiff's first claim with the AFBCMR asserted that his condition, at the time of his 1974 retirement, warranted a 100 percent disability rating rather than the 40 percent rating that he, in fact, was awarded. In his second claim, plaintiff averred that he should be retroactively promoted from captain to major, and, in addition, should receive back pay commensurate with that change in rank. Justification for this position was premised on the fact that his non-selection resulted not from a lack of qualification or suitability, but rather from an acrimonious relationship with a superior officer. In response to plaintiff's claims, on October 13, 1987, the AFBCMR issued a decision denying plaintiff's request for correction of records on the grounds that his application failed to comply with the three-year statute of limitations pursuant to § 1552(b)[5] and Air Force Regulation 31–3.[6]

---

Federal Claims has jurisdiction shall be barred unless the petition thereon is filed *within six years after such claim first accrues."* (Emphasis added.)

4. Plaintiff, of course, received performance reviews during this period indicating that he was not suitable for promotion based on his inability to effectively handle his duties. He challenges these reviews averring, in the process, that they result from a personality clash between himself and his reviewing officer.

5. Section 1552(b) provides, in pertinent part, as follows:

(b) No correction may be made under subsection (a)(1) unless the claimant or his heir or legal representative files a request for the correction within three years after he discovers the error or injustice. However, a board established under subsection (a)(1) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

6. Air Force Regulation 31–3 provides, in pertinent part, as follows:

§ 865.6 Time limit for filing application.

A claimant, heir, or legal representative, must file the application for correction of a

The board also held that waiving the foregoing statute of limitations in plaintiff's case, while within the board's discretionary power, would not, on this record, promote the interest of justice.

Less than three months later, on January 4, 1988, plaintiff filed a request for reconsideration of his application for correction of his records with the AFBCMR. The AFBCMR rejected his request on February 3, 1988, stating that plaintiff had presented no new, previously unavailable, evidence that would justify reopening the application. Plaintiff renewed his request for reconsideration on February 17, 1988, and was similarly denied. Further requests for reconsideration were also denied by the AFBCMR on August 1, 1990, and December 17, 1990.

The foregoing four requests for reconsideration of the initial October 13, 1987 Board adverse decision occurred during a period (*i.e.*, 1988–1990) in which plaintiff underwent psychiatric treatment at several hospitals. In November of 1988, for example, he was committed to Keesler Air Force Base Hospital for manic behavior; on December 6, 1988, plaintiff was committed to Gulfport Division Veterans Hospital for attacking his wife; and in February of 1989, Dr. Linda Cole, Chief of the Mental Health Clinic at Barksdale Air Force Base, began treating plaintiff. Until Dr. Cole diagnosed him with bipolar disorder (manic depression) in 1989, plaintiff claims that he remained completely unaware of the true nature of his mental condition. He also claims that Dr. Cole was *the first* physician

to conclude that he suffered from manic depression during active service, and to suggest that he was misdiagnosed as suffering from hypoglycemia.

Against this background, therefore, plaintiff filed a two-count complaint in this court on February 21, 1992. The first count prays for an increase from 40 percent to 100 percent in his disability compensation rate. And the second count prays for a retroactive promotion from the rank of captain to major and $300,000 in related back pay for the years he would have held the higher rank but for the wrongful denial. In its first response to said petition, on April 12, 1992, defendant, as previously noted, filed a motion to dismiss for lack of jurisdiction, claiming that plaintiff failed to comply with this court's six-year statute of limitations (28 U.S.C. § 2501). Plaintiff then filed an opposition to defendant's motion to dismiss on August 5, 1992. Issues raised by the parties' alternative cross-motions for summary judgment were fully briefed as of January 19, 1993. Approaching the case in this posture, we first turn our attention to defendant's motion to dismiss.

*Discussion*

■ Defendant's motion to dismiss for lack of jurisdiction alleges that plaintiff's claims are untimely pursuant to 28 U.S.C. § 2501.[7] Compliance with the statute of limitations, in this court, is an explicit *jurisdictional prerequisite* for the commencement of suit.[8] *Jones v. United States*, 801 F.2d 1334, 1335 (Fed.Cir.1986), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987). Therefore, if plaintiff's claims are not timely

record with the Secretary of the Air Force within 3 years after discovery of the alleged error or injustice. Failure to file within the time prescribed may be excused by the Board if it finds it would be in the interest of justice to do so. If the claimant, heir, or legal representative files an application more than 3 years after he or she discovers the error or injustice, he or she must include in his or her application his or her reasons why the Board should find it is in the interest of justice to excuse his or her failure to file the application within the time prescribed above.
32 C.F.R. § 865.6.

**7.** Section 2501 provides, in pertinent parts, as follows:

Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six year after such claim first accrues.

\* \* \* \* \* \*

A petition on the claim of a person under legal disability ... at the time the claim accrues may be filed within three years after the disability ceases.

**8.** Compliance with the statute of limitations is a condition of the United States' consent to suit. *Hart v. United States*, 910 F.2d 815, 817 (Fed.Cir. 1990); *Steiner v. United States*, 9 Cl.Ct. 307 (1986). In addition, this court is one of limited

filed, they must, of course, be dismissed with prejudice.

Defendant's motion to dismiss asserts that *both* of plaintiff's claims accrued, at the latest, on April 12, 1974, the date of his discharge, which was more than six years before the filing of the complaint in this court on February 21, 1992. Plaintiff responds, conversely, that his claims perhaps did not accrue until he was correctly diagnosed, in February 1989 by Dr. Linda Cole, with bipolar disorder, a condition he allegedly suffered during military service and continuously to the present. In short, plaintiff argues that he was under a legal disability as a result of his unknown ongoing psychological illness until February 1989.

On this record, the threshold issues, with respect to plaintiff's claim for *increased disability retirement compensation and rating*, are as follows: (i) whether the claim accrued more than six years prior to the filing of his complaint in this court on February 21, 1992; (ii) if so, whether plaintiff was legally disabled at the time his claim first accrued; and (iii) if so, whether the legal disability ceased more than three years prior to the filing of his complaint on February 21, 1992. The operative issue with respect to plaintiff's claim that he was *arbitrarily and capriciously denied promotion* to the rank of major is simply—whether that claim accrued more than six years prior to the filing of his complaint in this court.

If we determine, in our examination of plaintiff's disability retirement compensation claim, that accrual occurred more than *six years prior* to the filing of the petition in this court, the claim will be considered untimely; unless, of course, we also determine that plaintiff was under a legal disability *at the time of accrual.* If we find that plaintiff was under a legal disability at the time of accrual, the statute of limitations does not run or expire until three years after the *legal* dis-

ability ceases, *i.e.,* the lack of knowledge. Therefore, if the alleged legal disability ceased more than *three years prior* to the February 21, 1992 filing date, plaintiff's claim must be considered legally untimely for purposes of § 2501. After a careful consideration of the extensive administrative record ("AR") and the parties' submissions, this court has determined, first, that plaintiff's disability compensation claim accrued more than six years prior to being filed in this court; and second, that plaintiff was *not* under a legal disability when the claim accrued. And even assuming arguendo that he was under a legal disability, said disability ceased at a date *long prior to* a time that is within three (3) years of the filing of his complaint in this court. This is so because it is evident from the record that plaintiff was sufficiently aware of the nature of his legal rights and potential claim when he pursued disability claims before the SSA and the VA in 1975 and 1978. The disability compensation claim is, therefore, untimely.

If we determine, in our examination of plaintiff's wrongful denial of promotion claim, that the claim accrual occurred more than six years before the February 21, 1992 filing date, the wrongful denial of promotion claim will also be considered untimely. Similarly, and after careful consideration, this court has determined that plaintiff's denial of promotion claim accrued more than six years before filing. This claim is, likewise, untimely. Having so postured the case, we turn our attention to a detailed analysis of the issues presented above.

### 1. *Disability Compensation Claim*
#### a. *Accrual*

Plaintiff contends that his disability retirement compensation claim did not accrue on April 12, 1974, when he retired, because the PEB's decision of March 14, 1974, was "non-final." Only a *final* decision by a competent board, plaintiff argues, starts the running of the statute. Further, plaintiff maintains that he suffered from bipolar disorder while serv-

jurisdiction. Consequently, the statute of limitations will be construed strictly. *Soriano v. United States,* 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957); *see also Shelle-*

*man v. United States,* 9 Cl.Ct. 452, 455 (1986) (stating that "the Claims Court is a court of exceedingly limited jurisdiction").

ing in the Air Force and continuously following discharge, but that his military doctors, who examined him prior to discharge, misdiagnosed this condition as functional hypoglycemia.[9] The PEB, relying on this misdiagnosis, plaintiff argues, issued a recommendation that failed to accurately comprehend his true level of disability. Plaintiff further argues that by operating under the misimpression that his "hypoglycemia" would not increase his disability level, he did not pursue relief in this court until after a proper diagnosis was first rendered in February 1989, 15 years later. In order to support the proposition that his claim accrued no earlier than February 1989, plaintiff must establish (i) the non-finality of the PEB decision and (ii) the precise date when plaintiff became cognizant of his potential claim. Defendant's position, on the other hand, is simply that the disability compensation claim accrued in 1974 when the PEB issued its decision, and plaintiff was consequently discharged from military service.

### i. Non–Finality

Precedent in this court establishes that a claim first accrues when all events have occurred which fix the government's liability and entitle the claimant to institute an action. *Steiner v. United States*, 9 Cl.Ct. 307, 310 (1986); *Japanese War Notes Claimants Association v. United States*, 178 Ct.Cl. 630, 373 F.2d 356 (1967). In disability compensation cases, this generally means that the cause of action accrues when the first competent board renders a *final* decision, by either denying the claim forming the basis for relief or refusing to hear it at all.[10] *Burton v. United States*, 22 Cl.Ct. 706 (1991); *Burns v. United States*, 20 Cl.Ct. 758 (1990); *Real*, 906 F.2d at 1560 (holding that "If at the time of discharge an appropriate board ... heard the service member's claim but denied it, the limitations period begins to run upon discharge"); *Friedman v. United States*, 159 Ct.Cl. 1, 13, 310 F.2d 381, 389 (1962), *cert. denied sub nom., Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

The predecessor Court of Claims, however, in the landmark case, *Friedman*, has held that a board decision is non-final if "(i) *the claimant has been misled*, (ii) the board's decision is tentative and invites reopening, (iii) the armed service itself reopens the case, or (iv) there are other circumstances depriving the action or non-action of finality." *Friedman*, 159 Ct.Cl. at 24, 310 F.2d 381 (emphasis added). In another case, *Furlong v. United States*, 138 Ct.Cl. 843 (1957), cited in *Friedman*, the court also held that finality is not triggered if the plaintiff has been misled. The plaintiff in *Furlong* failed to request a retirement board hearing because he was advised by medical officers who examined him, prior to discharge, that his injury was not serious enough to warrant disability benefits. Eighteen months later, after retirement and a significant deterioration in his health, the plaintiff requested a hearing, which was summarily denied. Under normal

---

9. The Air Force Board For Correction of Military Records, in rejecting plaintiff's petition for reconsideration on August 1, 1990, commented on the events surrounding his discharge as follows:

 With respect to his mental status while on active duty, it is documented in the USAF School of Aerospace Medicine aeromedical evaluation summary dated 16 March 1965, that in the course of his evaluation for reactive, functional hypoglycemia a psychiatric evaluation was obtained. It was determined that the applicant was free of psychiatric disease. On 14 January 1966 he was seen by the Chief, Department of Psychiatry and Neurology at McChord AFB to evaluate possible episodes of hypoglycemia associated with flying, and difficulties at home. After extensive review of the applicant's medical record and interview, it was determined that while his hypoglycemia prevented the applicant from flying duties,

 there were no other duty restrictions based on psychiatric grounds. And finally, psychiatric consultation was obtained to complete his physical examination in preparation for his Medical Evaluation Board. No psychosis or neurosis was diagnosed and an S1, no psychiatric abnormality, was assigned to his physical profile on 3 December 1973.

10. A competent board is one that is statutorily authorized to pass on a service member's eligibility for disability pay. Normally, a PEB is the first appropriate and competent board to make such a decision. *Real v. United States*, 906 F.2d 1557, 1560 (Fed.Cir.1990). However, if a plaintiff neither requests nor receives consideration by a board prior to discharge, a decision by a correction board may constitute the first final decision for purposes of determining when the claim accrued. *Friedman v. United States*, 310 F.2d 381, 396 (1962).

circumstances, the plaintiff's initial waiver of appearance before the retirement board would trigger sufficient finality to commence the running of the statute. The Court of Claims, however, found in *Furlong* that, because of the effect of the misleading advice on the plaintiff, accrual did not occur until "his worsened condition made it obvious to him that their advice was erroneous." *Id.* at 846.

Here at bar, plaintiff insists that he was similarly misled, *i.e.*, that he in fact received misleading advice and that his worsened condition from bipolar disorder did not make it obvious to him that said advice was erroneous until February 27, 1990, *infra.* Given such, he argues, the PEB's March 14, 1974 decision recommending only 40 percent disability was non-final. In support of his position, plaintiff references a *post litem motam* letter from Dr. Cole to the Department of the Air Force, dated February 27, 1990, stating that "Captain Coon was also actively suffering from Bipolar Disorder at the time of his medical retirement and this had likely been the case for a period of 5 to 6 years at least. For partly understandable reasons, this diagnosis was missed at the time." Plaintiff presented a second affidavit from Dr. Cole, dated June 5, 1992, in further support of the foregoing position. Additionally, plaintiff relies on a September 15, 1990 letter from Dr. Anna Marie Singdahlsen, who also examined him, to the AFBCMR stating that she diagnosed him with bipolar disorder in February of 1989. Said letter further advises that, in her opinion, the numerous glucose tolerance tests taken before plaintiff's discharge in 1974 provide no evidence of hypoglycemia.

Based on the factual assertions adduced in plaintiff's complaint that *in substance* the military doctors failed to accurately diagnose his condition causing him to be misled, resulting in the PEB's failure to consider the full depth of plaintiff's disability and consequently deterring him from learning the true nature of his condition, we find that the PEB decision was non-final. We so conclude because in determinations pursuant to a motion to dismiss, facts alleged in the complaint are usually construed in a light most favorable to the non-movant, *i.e.*, all reasonable inferences are drawn in favor of the non-movant. *Montego Bay Imports, Ltd. v. United States,* 25 Cl.Ct. 639, 648 (1992); *Cupey Bajo Nursing Home, Inc. v. United States,* 23 Cl.Ct. 406 (1991). *Reynolds v. Army and Air Force Exchange Service,* 846 F.2d 746, 747 (Fed. Cir.1988), instructs us that, in considering motions to dismiss for lack of subject matter jurisdiction—

> ... we normally consider the facts alleged in the complaint to be true and correct. *Scheuer v. Rhodes,* 416 U.S. 232, 236 [94 S.Ct. 1683, 1686, 40 L.Ed.2d 90] ... (1974); *Air Prod. and Chems., Inc. v. Reichhold Chems., Inc.,* 755 F.2d 1559, 1562 n. 4 ... (Fed.Cir.) ... (1985)....
>
> If a motion to dismiss for lack of subject matter jurisdiction, however, challenges the truth of the jurisdictional facts alleged in the complaint, the ... court may consider relevant evidence in order to resolve the factual dispute.[11] *Land v. Dollar,* 330 U.S. 731, 735 [67 S.Ct. 1009, 1011, 91 L.Ed. 1209] ... (1947)....

Once the court's subject matter jurisdiction is put in question, it is, of course, incumbent upon petitioner to go forward with evidence establishing his burden, regarding jurisdiction, by a preponderance. More importantly, "the party asserting jurisdiction must be given an opportunity to be heard before dismissal is ordered." *Reynolds,* 846 F.2d at 748.

*ii. Cognizance of Potential Claim*

■ Inasmuch as our analysis of the *pleadings,* taken as true, compels us to find a sufficient factual underpinning for the conclusion that plaintiff was arguably misled by the service's 1974 discharge determination, requiring a finding of non-finality regarding the PEB's 1974 decision, this court must now determine—when, following decision, did plaintiff in truth first discover facts sufficient to alert him of his potential claim. As we indicated above, the revised and operative accrual date surfaces when the conditions or

---

11. Defendant, in its motion to dismiss, and for the limited purpose of said motion, accepts as true the factual allegations outlined by plaintiff in his complaint.

circumstances, rendering the PEB decision non-final, expire. *See Furlong*, 138 Ct.Cl. at 846. Under plaintiff's postulation of the facts, accrual occurred, at the earliest, sometime in February of 1989, when he was diagnosed by Dr. Cole with bipolar disorder. As such, contends plaintiff, the filing of a complaint on February 21, 1992, approximately three years after accrual, would be timely.

Notwithstanding the foregoing contentions, the administrative record at bar, however, is clearly probative of the fact that plaintiff was possessed of sufficient knowledge and understanding, by 1976, to put him on notice that he had a potential disability claim. In short, the obvious inference reasonably deducible from the collective evidence is indisputable upon a consideration of the following facts: (1) Plaintiff was seen by Dr. Stephen D. Carrington at the psychiatric ward of the Veterans Hospital in Shreveport, Louisiana, on July 21, 1975; (2) at that time, plaintiff's wife informed the doctor that her husband had been exhibiting strange behavior, including taking an unexpected plane trip one morning and turning up 7,000 miles away; (3) at the conclusion of the visit, Dr. Carrington advised plaintiff's wife that he needed treatment;[12] and (4) plaintiff checked into the Shreveport Veterans Hospital 10 months later for a period of a month, beginning on June 2, 1976. Upon discharge, Dr. Carrington drafted a summary report, stating in relevant part as follows:

> Patient's wife reported that the patient apparently desired retirement because he had been passed over for a promotion to Maj. and that he had become suspicious, anxious and in fact had been treated with Valium 40 mgm per day because of his anxiety. She states that over the past 3 years, patient had become more anxious and had exhibited "strange" behavior at times, becoming acutely paranoid, frequently stating that the Air Force gave him LSD and that they were watching him and possibly planning his demise. Patient had also been suspicious of family members and friends on many occasions, feeling that he had been drugged and that this caused his inappropriate behavior.... Psychological testing revealed that this patient was in a state of mental confusion, to be highly anxious in manifest, chronic schizophrenic thought patterns with paranoid ideation....

(AR 512). Other probative evidence confirms this court's conclusion that plaintiff had sufficient knowledge of the nature and extent of his condition during this period shortly after discharge from the Air Force to cause the subject action to accrue. In 1975, for example, plaintiff sought and obtained a 100 percent disability rating from the SSA. Thereafter, in 1978, he also obtained a similar 100 percent disability rating from the VA. Even of greater significance is the fact that plaintiff also received a confirmatory diagnosis of chronic paranoid schizophrenia by Dr. Melanie Sanders on January 1, 1982, at the Veterans Hospital in Shreveport.

Against this persuasive factual medical record, this court is satisfied that plaintiff acquired sufficient understandable knowledge of his psychological condition upon discharge from the Veterans Hospital in Shreveport in 1976, after 36 days of in-patient care and a diagnosis of paranoid schizophrenia. It is reasonably deducible that plaintiff was or should have reasonably been aware of a potential claim for increased disability compensation based on his psychological illness at that time, but no later than 1978 when he sought and obtained a 100 percent disability rating from the VA. Therefore, this court is constrained to find that plaintiff's disability compensation claim accrued, at the earliest on July 8, 1976, and at the latest in January 1982.

---

**12.** The abbreviated medical record states in relevant part as follows:

> This 41 year old white male was admitted to Ward 9–E of Psychiatry Service on 7/21/75, having been referred here because of his bizarre behavior by his local physician. Patient's wife stated he had been acting strange for several months, *i.e.* leaving the house one morning and ending up 7,000 miles way [sic].

> He also felt the house was bugged and his food poisoned.... DOCTOR'S PROGRESS NOTES: During the initial interview for admission, the patient accused the writer of "brain washing" his wife and stated that "he was being zeroed in on here." He demanded to go home and his wife agreed to take him. She was advised that he needed treatment." (AR 513).

Having determined that accrual occurred no later than January 1982, we, therefore, also find that more than six years expired after this date before plaintiff filed his complaint in this court on February 21, 1992. As such, according to 28 U.S.C. § 2501, plaintiff's increased disability compensation claim is untimely, unless, pursuant to our analysis below, we also find that plaintiff was under a legal disability at that time.

### b. *Legal Disability*

 Plaintiff contends alternatively that, due to the disabling effects of his ongoing psychological condition, he was made unaware of his legal rights, and consequently failed to file a complaint in this matter until February 21, 1992. His mental illness, plaintiff argues, rendered him incapable of recognizing a reason to file a legal claim for compensation. Conversely, defendant argues in its motion to dismiss that, while plaintiff may have been troubled by psychological problems when his claims first accrued, he clearly did not suffer at any time from a *legal* disability within the meaning of 28 U.S.C. § 2501.

That statute provides, in pertinent part, that—"A petition on the claim of a person under legal disability ... at the time the claim accrues may be filed within three years after the disability ceases." In order to fall within the parameters of the legal disability provision and toll the statute of limitations, plaintiff must, of course, establish that—(i) he suffered under a legal disability at the time of accrual, which occurred upon release from the Veterans Hospital in Shreveport, Louisiana, on July 8, 1976, and (ii) the legal disability ceased no more than three years before the date plaintiff filed his complaint in this court.

 We note from our review of established precedent that courts are reluctant, however, to recognize legal disability, and will do so only after careful scrutiny. In short, only a serious impediment can toll the running of the statute. *Goewey v. United States*, 222 Ct.Cl. 104, 112 (1979). Hardship, inconvenience, or ignorance cannot serve as grounds for tolling the statute. *Id.* Moreover, the burden is heavy because the law presumes sanity and competency. The bur-

den of proving legal disability, therefore, falls on the plaintiff, as well as the obligation to rebut the presumption. *Id.; Waldorf v. United States*, 8 Cl.Ct. 321, 324 (1985). The legal disability provision of § 2501 provides relief to the individual who, because of a personal handicap, cannot care for his or her property, cannot transact business, or does not understand the nature of his or her legal rights and liabilities. *Goewey*, 222 Ct.Cl. at 113–14. In effect, the law recognizes that the individual's access to the courts has been impaired by the disability, and allows additional time to file suit. *Id.* The running of the statute, however, recommences if, subsequent to the onset of a disability, the plaintiff experiences a lucid or non-disabling period. A resumption of the individual's disability, therefore, does not *re-toll* the statute. *Id.* at 116. Once the disability ceases, the plaintiff has three years to file in this court before jurisdiction over the claim lapses. 28 U.S.C. § 2501. Thus, to raise timely claims for disability benefits under the statute, a plaintiff must first establish that, at the time of accrual, he suffered continuously under a disability, without any lucid periods, during which time he was incapable of caring for his property, transacting business, understanding the nature and effect of his acts, or comprehending his legal rights and liabilities. *Waldorf*, 8 Cl.Ct. at 324.

In the instant case, on this record, plaintiff admits in his response to defendant's motion to dismiss that he pursued a disability claim before the Social Security Administration in 1975 as well as the Department of Veterans Affairs in 1978. In each case, plaintiff unquestionably achieved a 60 percent increase in his disability rating, to 100 percent. By pursuing these claims, plaintiff unquestionably demonstrates a clear and profound ability to understand his legal rights and the related operative facts with respect to his military benefits, as well as the knowledge of how to gain access to the courts. The case law speaks with a single voice on this issue. For example, in *Waldorf*, the Claims Court held, respecting the foregoing issue, that the plaintiff's successful prosecution of a· claim before the Social Security Administration was probative evidence that he was *not* un-

der a legal disability, inasmuch as he demonstrated an ability to use logic, follow procedures, and pursue his rights in protecting that claim. *Id.* at 325–26. Similarly, in *Goewey*, the Court of Claims reasoned that merely seeking redress of one's rights is probative evidence that an individual is not under a legal disability. The court stated that "if plaintiff was competent to file [an application with the Air Force Board for the Correction of Military Records], it is difficult to understand why at that time he was not also competent to have filed suit in this court." *Goewey*, 222 Ct.Cl. at 107. Furthermore, by the time his claim accrued in July of 1976, plaintiff in this case possessed medical documentation of the severity of his mental illness. Dr. Carrington's medical report characterizes plaintiff's condition as chronic paranoid schizophrenia. We find the evidence at bar to be persuasive simply because, during the period from 1975 through 1978, plaintiff, not once, but twice, pursued claims for an increased disability rating at the SSA and VA. In 1976, he received a medical opinion after a month of psychiatric observation, which apprised him of his severe and debilitating mental condition. These critical facts demonstrate that plaintiff understood that he suffered from a potentially compensable disability, and that he was competent, at that time, to have pursued a claim before this court. In other words, plaintiff knew the basis for his claim, and knew how to secure redress in the courts. We find, therefore, that plaintiff was *not* legally disabled at the time his claim accrued, and cannot now utilize the tolling provisions of § 2501 to resuscitate his otherwise stale claim.

2. *Wrongful Denial of Promotion Claim*

■ Finally, defendant's motion to dismiss avers that plaintiff's claim for retroactive promotion to the rank of major and for back pay accrued at the moment he was wrongfully denied that promotion, or, at the latest, upon his discharge from the service. According to his complaint, plaintiff allegedly became eligible for promotion from captain to major in 1970, 1971, 1972, and 1973. While plaintiff was actually considered in each of those years, he was not, in fact, selected for promotion in that he was passed over. Later, plaintiff was honorably discharged in 1974. If we agree with defendant's position, the claim must be dismissed as untimely, pursuant to 28 U.S.C. § 2501, because more than six years elapsed between plaintiff's discharge, *i.e.*, accrual of this cause of action, and the filing of his claim in this court.

Plaintiff argues in opposition that, as with his disability compensation claim, accrual did not occur until he learned, in February 1989, the accurate and specific diagnosis for his psychological condition.

We reject that position, inasmuch as in wrongful denial of promotion cases, the claim accrues at the time the plaintiff is first and finally denied promotion. *Brownfield v. United States*, 218 Ct.Cl. 477, 483, 589 F.2d 1035 (1978). In that case, the court held that when the Secretary of the Air Force denied the plaintiff's bid for promotion, the ensuing claim for improper non-selection accrued at the same time. *Id.* Here, in the case at bar, plaintiff was denied promotion to the grade of major for the final time in September 1973. Plaintiff was retired about seven months later, on April 12, 1974, at the rank of captain. By the date of retirement, at the very least, all events had occurred fixing the government's potential liability for a wrongful denial of promotion. Plaintiff undoubtedly was aware of the four consecutive promotion denials, *i.e.*, in 1970, 1971, 1972, and 1973, and their effects on his rank and salary, and was then clearly free to institute suit at that moment, if not earlier. This court, therefore, finds that plaintiff's wrongful denial of promotion claim accrued, at the latest, on April 12, 1974, upon discharge. Consequently, in accordance with the relevant provision of § 2501, we also find this claim to be untimely because it was filed on February 21, 1992, more than six years after the date of accrual.

*Conclusion*

For the reasons stated above, the court finds that plaintiff's increased disability compensation claim first accrued on July 8, 1976, or the latest in 1982, and that no fact or circumstance tolled the statute of limitations thereafter. Plaintiff's failure to comply with

the statute of limitations set forth in 28 U.S.C. § 2501 deprives the claim of jurisdiction before this court. The court also finds that plaintiff's wrongful denial of promotion claim accrued on April 12, 1974. Plaintiff's failure to comply with § 2501 with regard to this claim similarly deprives it of jurisdiction before this court. Deprived of jurisdiction to hear either of plaintiff's claims, we hereby GRANT defendant's motion to dismiss for lack of subject matter jurisdiction. No costs. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.