HUE THI NGUYEN, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 02–969C.

United States Court of Federal Claims.

May 1, 2003.

Kent M. Henderson, Law Offices of Federico C. Sayre, Santa Ana, California, for Plaintiffs.

David B. Stinson, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, with whom were David M. Cohen, Director, and Robert D. McCallum, Jr., Assistant Attorney General; Jeffrey Klein, Office of the Legal Advisor, Department of State, and William Reyes, Office of General Counsel, Department of Defense, of counsel.

## OPINION

DAMICH, Chief Judge.

### I. Introduction

This case, filed August 12, 2002, reflects one more aspect of the unfortunate predicament of an untold number of Vietnamese nationals who were working in Vietnam for various agencies of the United States at the time the United States government abandoned the country at the end of the Vietnam war. Complainants are two Vietnamese citizens, residents of Ho Chi Minh City (aka Saigon), alleging breach of contract and other counts, who seek to represent a class of similarly situated plaintiffs who were never paid final wages and/or other benefits owed as of April 30, 1975.

Pending is Defendant's motion to dismiss [1] for lack of jurisdiction or for failure to state a claim for which relief can be granted, pursuant to Court of Federal Claims Rules 12(b)(1) and (b)(6). Despite tremendous sympathy for the plight of these Plaintiffs, this Court must, regrettably, **GRANT** Defendant's motion to dismiss because the complaint was filed long after expiration of the six-year statute of limitations period that governs actions before us.

### II. Background

Plaintiff Hue Thi Nguyen was employed by the U.S. Department of State at the United States Embassy in Saigon until the U.S. evacuation on April 30, 1975, and the establishment of the Provisional Revolutionary Government of Vietnam in place of the U.S.-supported government of South Vietnam. Plaintiff Than Nhu Nguyen was at the time an employee of the U.S.Defense Attache Office and had previously been a driver for the U.S. Military Assistance Command.

From the time of the U.S. evacuation until the 1990s there were no official diplomatic relations between the U.S. and the Socialist Republic of Vietnam. On January 28, 1995, the two countries entered into an agreement concerning the settlement of certain property claims.[2] On August 12, 1996, the Socialist Republic of Vietnam was removed from a list of nations into which the U.S. Treasury was prohibited from sending checks drawn against the U.S., pursuant to Treasury regulation 31 C.F.R. § 211.1 ("Treasury regulation"). Plaintiffs' complaint, filed precisely six years thereafter, reciting counts of breach of contract, common counts, quantum meruit, restitution/unjust enrichment, promissory estoppel, constructive trust, resulting trust, and accounting, seeks relief for final wages and separation benefits, Tet Bonus, sick leave, annual leave, cash-subvouchers, and other such benefits.

Plaintiffs claim jurisdiction in this Court under the Tucker Act, 28 U.S.C. § 1491, based on express and implied in fact contract claims and such statutes and regulations as the Foreign Service Act of 1946/Foreign Service Act of 1980(FSA), Executive Order 10973,[3] and the Foreign Affairs Manual (FAM).

### III. Discussion

 The jurisdiction of the Court of Federal Claims depends "upon the extent to which the United States has waived its sovereign immunity." *Inter–Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365–66

---

1. By previous Order, Plaintiffs' motion for class certification was stayed pending resolution of this motion to dismiss and is thus hereby denied as moot.

2. Agreement Between the Government of the United States of America and the Government of the Socialist Republic of Vietnam Concerning the Settlement of Certain Property Claims ("Claims Agreement"), January 28, 1995, State Dept. No. 95–39, KAV No. 4147, 1995 WL 79523.

3. At oral argument, however, Plaintiffs' counsel acknowledged that he could not point to any provision of the Executive Order that is "money-mandating" for purposes of jurisdiction under the Tucker Act. Tr. 8:14—9:3, March 11, 2003.

(Fed.Cir.2002). Waivers of sovereign immunity are narrowly construed, *id.* at 1365, and cannot be implied but must be unequivocally expressed. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

■ The Tucker Act is the central authority by which consent has been granted by Congress for suit in the Court of Federal Claims. *Id.* at 397, 96 S.Ct. 948. The statute allows an action in this Court only if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (1982). The Tucker Act, however, is merely jurisdictional; that is to say, it confers jurisdiction upon the Court whenever a substantive right exists via a proper contract claim or other money-mandating provision of law, regulation, or the Constitution. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980).

Defendant cites several grounds in support of its motion for dismissal: failure of the complaint to contain well-pleaded allegations of express or implied-in-fact contract, failure to establish existence of a money-mandating statute or regulation, failure to establish reciprocity pursuant to 28 U.S.C. § 2502 (foreign national plaintiffs may bring suit in the Court of Federal Claims only if their sovereign affords the same rights to nationals of the United States), extinction of Plaintiffs' claims by virtue of the 1995 Claims Agreement between the two countries, laches, and the Tucker Act's statute of limitations. "In passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, unchallenged allegations of the complaint should be construed favorably to the pleader. The complaint should not be dismissed unless it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989) (internal citation omitted).

It is not necessary, however, to belabor every argument, for the statute of limitations is itself a jurisdictional prerequisite. *Jones v. United States,* 801 F.2d 1334, 1335 (Fed. Cir.1986) ("Compliance with the Claims Court's statute of limitations is jurisdictional."); *Coon v. United States,* 30 Fed.Cl. 531, 534 (1994) ("Compliance with the statute of limitations, in this Court, is an explicit *jurisdictional prerequisite* for the commencement of suit.") (emphasis in original). Actions under the Tucker Act are subject to a six-year statute of limitations. 28 U.S.C. § 2501. Section 2501 provides that "[e]very claim of which the United States Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *Id.*

For purposes of Defendant's motion to dismiss, therefore, the Court must accept Plaintiffs' allegations that they worked for the United States during the period in question and that they were owed payment, etc., when the U.S. evacuated. As to the jurisdictional prerequisite of the statute of limitations, nevertheless, the questions that present themselves are: A) what was the accrual date of Plaintiffs' causes of action?; and B) is there any basis for a determination that the statute of limitations on Plaintiffs' action was tolled and, if so, was Plaintiffs' complaint otherwise filed in time?

A. *Plaintiffs' Causes of Action Accrued in 1975.*

■ It is well-established that, as a general rule, "a claim 'first accrues' when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to *institute an action.*" *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988) (emphasis added). The Federal Circuit further explained that the general rule includes the requirement that "the plaintiff was or should have been aware of [the] existence" of such events. *Id.* By Plaintiffs' own complaint, they seek redress "for pay and benefits owed ... following the defendants' departure from South Vietnam at the end of the Vietnam conflict in April 1975." Complaint, ¶ 13. Thus, it seems apparent that the accrual of their causes of action occurred, if not by April 30 of that year, at least within a reasonable time thereafter when such payments would have been due and certainly by the

end of 1975. Plaintiffs surely were aware by that time, or should have been, that they were still owed final wages, etc.

Plaintiffs argue, however, that the Treasury regulation prohibiting the sending of a check or warrant drawn on U.S. funds into the Socialist Republic of Vietnam (and certain other countries), 31 C.F.R. § 211.1, deprived them of the practical opportunity to receive payment from the U.S. government and thus had the effect of postponing the accrual date of their cause of action (until the Socialist Republic of Vietnam was removed from that listing on August 12, 1996). In support of their argument, Plaintiffs describe the general rule on accrual of a cause of action as including the elements not only of "institut[ing] an action" but also of entitlement *"to obtain[ing] relief in court." Lord Day & Lord v. Socialist Republic of Vietnam,* 134 F.Supp.2d 549, 561 (S.D.N.Y.2001) (emphasis added). Plaintiffs also cite *Dorsey v. Apple Computers, Inc.,* 936 F.Supp. 89, 91 (E.D.N.Y.1996) for what they describe as the infinitely sensible rule that "a cause of action does not accrue *until its enforcement becomes possible"* (citing *Jacobus v. Colgate,* 217 N.Y. 235, 245, 111 N.E. 837, 840 (1916)) (emphasis added).

While *Lord Day & Lord* and *Dorsey* were decided in federal court, their holdings on the inquiry necessary to determine the accrual of a cause of action are based on *New York state tort law.* Thus, unfortunately for Plaintiffs, they are attempting to add elements of a particular state's tort law onto the Federal Circuit's clear prescription of when a claim first accrues under § 2501 (which establishes the limitations period on the *non-tort* actions to which this Court's jurisdiction is confined).[4] In *L.S.S. Leasing Corp. v. United States,* 695 F.2d 1359, 1365 (Fed.Cir.1982), citing the same formulation reiterated in *Hopland Band,* the Court gave, as an example of "when all events necessary to fix the Government's liability have occurred," that of a contractor entitled to demand payment because services have been rendered. That formulation includes no requirement that the

fixation of the government's liability or the prospect of a plaintiff's judgment in court must also incorporate the subsequent steps necessary for enforcement or collection of an award of damages. *L.S.S. Leasing,* in turn, cites with approval the Court of Claims' formulation in *Nager Electric Co., Inc. v. United States,* 177 Ct.Cl. 234, 368 F.2d 847 (1966), that, after "hav[ing] reexamined the long chain of our limitations rulings in the contract field," the accrual date is when events "entitl[e] the claimant to demand payment and *sue* here for his money." *Id.* at 851 (emphasis added).

Having established that the events occurred in 1975, the remaining question, thus, is whether the Treasury regulation prohibited Plaintiffs from instituting an action in this Court to demand payment for the compensation they were owed. In the time period before the regulation was amended in 1996, it merely stated that "[a] check or warrant intended for delivery in [Vietnam] shall be withheld unless the check or warrant is specifically released by the Secretary of the Treasury." 31 C.F.R. § 211.1(b) (1995). As was noted in a quite similar suit, "this provision would not appear to be a direct disability to bringing a claim so long as any money determined to be owed to the plaintiffs was not mailed to them in Vietnam." *Buong Van Ho v. United States,* 52 Fed.Cl. 664, 666 (2002). Furthermore, the regulation also provides for a specific release from its conditions by the Secretary of the Treasury.

While it may have been potentially lethal and enormously impractical under the severe circumstances at play in Vietnam in the six years from 1975 through 1981, certainly as to Vietnamese nationals subject to imprisonment, deportation to the countryside, and "re-education" camps for their past association with the United States, the terms of the Treasury regulation did not themselves preclude the institution of a lawsuit in this Court.

In sum, Plaintiffs' cause of action accrued by all accounts at least by the end of 1975. The next question is whether any conditions

---

4. Indeed, the Court is somewhat taken aback at Plaintiffs' counsel's failure to note more plainly their reliance on New York state tort law for their effort to expand on the Federal Circuit's, and this Court's, precedents on cause-of-action accrual.

tolled the six-year statute of limitations established in 28 U.S.C. § 2501.

**B.** *Even if Plaintiffs Qualified Under the Tolling Provisions of § 2501, Their Complaint is Still Untimely.*

■ Section 2501 provides that actions against the United States may be tolled in limited circumstances: "A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." [5] *Id.* In this context, Plaintiffs make an alternative argument with respect to the Treasury regulation at issue. Even if the Court finds that the Treasury regulation didn't extend the *accrual* date of Plaintiffs' cause of action until Vietnam was removed from the list of barred countries, they maintain [6] that the regulation nonetheless served as a "legal disability" for purposes of § 2501.

In *Goewey v. United States,* 612 F.2d 539 (Ct.Cl.1979), the Court observed,

> The historical note to section 2501 makes clear that the words 'A person under legal disability or beyond the seas at the time a claim accrues' were not designed to change existing law, but were intended to consolidate by substitution the prior archaic terminology 'married women first accrued during marriage, of persons under the age of twenty-one years first accrued during minority, and of idiots, lunatics, insane persons, and persons beyond the seas at the time the claim accrued.'

*Id.* at 543–44.

The Court in *Goewey* noted that "hardship" and "inconvenience" did not qualify as grounds for tolling the statute. *Id.* at 544. "The 'legal disability' provision of statutes of limitations are designed to provide relief from some personal handicap or impediment affecting the individual litigant and preventing him *from bringing a timely suit." Id.* (emphasis added). Thus, it is doubtful that

the Treasury regulation served as a "personal handicap or impediment" that prevented Plaintiffs from initiating their claim. It may have served to cloud their prospects of recovery in the form of a check or warrant drawn on U.S. funds to be sent to them in Vietnam, but the regulation itself did not preclude the filing of their claim.

Plaintiffs' claim to "legal disability" may perhaps be stronger based simply on the physical danger they faced in the years immediately following the U.S. evacuation. The Court can certainly take judicial notice of the "re-education camps" to which American "sympathizers" were deported by the Provisional Revolutionary Government in Vietnam as well as the severity of conditions that led innumerable thousands of Vietnamese "boat people" to flee the new Communist regime. Although "hardship" and "inconvenience" are not grounds for tolling the statute of limitations, it is certainly arguable that Plaintiffs faced more than mere "hardship" and that the danger of publicly identifying oneself at that time as having been, for example, a driver for the U.S. Military Assistance Command qualifies as a "personal impediment" to bringing a timely suit. Certainly confinement in "re-education camps" would constitute such an impediment.

Nevertheless, § 2501 provides that a party's claim must be filed "within three years after the disability ceases." 28 U.S.C. § 2501. Thus, if Plaintiffs' legal disability ceased even as late as August 1996, a period of some 21 years after their cause of action accrued, they would have had only three years after that date to file their claim. *See Compania Maritima v. United States,* 136 Ct.Cl. 697, 145 F.Supp. 935, 940 (1956). Under this expansive view of Plaintiffs' potential legal disability, this Court is constrained to consider August 12, 1996, as the latest possible date of their inability to bring suit because that is the latest date that Plaintiffs' posited even at oral argument.[7] As their

---

5. The condition "beyond the seas" only applies to U.S. citizens who are outside of the boundaries of the United States, not to aliens, and is therefore not applicable to Plaintiffs. See *Pacifico v. United States,* 80 Ct.Cl. 391, 1934 WL 2072 (1934).

6. This argument was made at oral argument, although not in the Plaintiffs' brief in opposition to Defendant's Motion to Dismiss. Tr. 10:16—11:11, March 11, 2003.

7. Conceivably, Plaintiffs were still in danger even after August 12, 1996, because of lingering animosity in Vietnam towards those who had

claim was not filed until August 12, 2002, either argument as to their legal disability is ultimately unavailing because their claims were filed too late.[8]

## IV. Conclusion

It may ·be that Plaintiffs' only hope for remedy lies in a private bill in the Congress of the United States. This Court, however, is constrained by the limitations that Congress has placed on our jurisdiction over waivers of sovereign immunity. Accordingly, for the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss.

The Clerk of the Court is directed to dismiss the complaint.

worked so many years before for U.S. government agencies. Inasmuch as Plaintiffs, however, never made any claim to legal disability based on physical danger, this Court considers August 1996 as the occasion when Plaintiffs' potential legal disability ceased.

**8.** Plaintiffs also make a perplexing argument that the United States "reaffirmed" the debts they are claiming by way of a May 5, 1995, letter from the U.S. Agency for International Development regarding a sub-voucher held by an individual who is not a named plaintiff in this action. In addition, they argue that a file memo, dated August 11, 1995, in the office of the Comptroller General

of the United States regarding the same sub-voucher of the same individual also constitutes a reaffirmation of the debts. They conclude, "Plaintiffs' Complaint was filed within six years of the second of these acknowledgements." Pls.' Opp'n to Def.'s Mot. to Dismiss at 12.

In fact, Plaintiffs are flatly incorrect in their calculation of time. Six years from August 11, 1995 is August 11, 2001, one year and a day prior to the filing of Plaintiffs' Complaint. As the Court noted in *Buong Van Ho*, "Under any construction, the statute of limitations has run on plaintiffs' claims." *Buong Van Ho*, 52 Fed.Cl. at 667.